OPINION OF THE COURT
Irving Lang, J.
In this habeas corpus proceeding, petitioner contests his rendition to the State of Alabama to answer an indictment for securities fraud on two unusual grounds. First, he claims that no date is alleged in the indictment, thereby depriving him of the constitutional and statutory right to resist extradition on the ground that he was not in the demanding State at the time of the commission of the alleged offense. Secondly, he claims that the specific acts of which he is accused do not substantially charge him with a crime under Alabama law. Rather, he asserts the demanding State is attempting to use criminal process to enforce what is a civil obligation. He claims that since the indictment does not "substantially charge the person demanded with having committed a crime under the law” of Alabama, the writ should be granted (CPL 570.08).
THE FACTS
It is undisputed that the petitioner is the inventor of a patented baseball glove and tethered ball device. The complainant in Alabama, Roy Bartow Riley, invested in the development and marketing of petitioner’s product. Riley’s claim that Lewis defrauded him forms the basis of the three- *50 count indictment which constitutes the foundation for the issuance of the extradition request.
THE INDICTMENT
The Alabama indictment charges petitioner with three counts of violation of section 8-6-17 of the Code of Alabama (securities fraud).
The first count charges Samuel Lewis with misrepresenting to Mr. Riley that the security (investment interest in the baseball device) was being sold "solely to raise capital to develop the invention, when in fact the funds raised * * * were used for personal expenses and for development of other patents”.
The second count charges Lewis with misrepresenting to Mr. Riley "that this was a 'short term investment’: that there would be 'considerable profits’ * * * that Riley would 'double his money’ within 30-90 days * * * that * * * Riley would get his money back in 'six months’ and would make $15,000.00 to $20,000.00 on his investment, when in fact * * * Riley * * * has not realized any return on his investment and no profits have been generated”.
The third count charges Lewis with misrepresenting to Mr. Riley that if "Riley * * * was not satisfied with his purchase of securities * * * Lewis would on demand return his investment with interest, when in fact, all demands and requests for the return of his investment were refused by said Samuel Lewis”.
In no count of the indictment is any date for the commission of the offense alleged.
THE MISSING DATE
While petitioner claims that the indictment is deficient because of the failure to state the date of the alleged commission of the crime, it is clear that this court may not inquire into the technical sufficiency of the demanding State’s indictment (People ex rel. Higley v Millspaw, 281 NY 441). As a general rule the proper place to launch such a challenge is in the Alabama courts (People ex rel. Hall v Casscles, 51 AD2d 623, app dsmd 38 NY2d 1006). Moreover, it is doubtful that petitioner could succeed in the Alabama courts since Alabama law requires a statement of time in the indictment only when time is a material element of the offense (Code of Alabama, *51 § 15-8-30; Haynes v State, 40 Ala App 106; Williams v State, 348 So 2d 1101 [Ala]).
However valid the dateless indictment may be under Alabama law, petitioner is still entitled to contest his rendition by claiming that he was not present in the demanding State at the time of the alleged crime. New York law requires that the fugitive prove by "clear and convincing evidence” that he was not in the demanding State at the time of the crime (People ex rel. Harris v Warden, N. Y. City Adult Remand Center, 42 AD2d 549; People ex rel. O’Dell v Quinlan, 81 Misc 2d 271 [clear and conclusive evidence]; People ex rel. Farbe v Warden, Brooklyn House of Detention for Men, 42 AD2d 874 [conclusive proof].) But whatever the burden on petitioner, he cannot meet it in the absence of a date to challenge.
An alleged fugitive is entitled to a reasonably specific date in order that he might claim that he was not in the demanding State at that time. Without such a date, he would be deprived of due process (Matter of Gibson, 147 F Supp 591). In People ex rel. Friedman v Commissioner of N. Y. City Dept, of Correction (66 AD2d 689), the Appellate Division, First Department, set aside the trial term’s dismissal of a habeas corpus petition where an alleged crime took place in Massachusetts "between May 15 and August 31” of 1973. The court held that to require the alleged fugitive to "prove decisively” that more than five years ago he was not in Massachusetts for each of 109 days was "too onerous” a burden of proof.
However, the court also pointed out that a demanding State "can cure an unspecific extradition warrant by furnishing specific dates for the offenses with which the accused is charged” and gave Massachusetts an opportunity to do so (see Stumpf v Matthews, 195 F2d 35).
Thus, although a reasonably specific date is essential for a demanding State to successfully extradite a fugitive from an asylum State, it is not essential that the date be in the indictment. Rather, the date may be supplied in any official document of the demanding State to effectuate the purpose of extradition proceedings (cf. People v Iannone, 45 NY2d 589).
This is precisely the situation here. For while the indictment contains no date of the alleged crime, the "Application for Extradition” by the District Attorney of Montgomery County, Alabama, addressed to the Governor of the State of Alabama, does include a copy of the indictment filed August 15, 1978, and a claim that the alleged crime was committed on *52 "September 25, 1973.” The sworn application, the indictment, the capias, and the request for extradition by the Governor of Alabama — all were before the Governor of the State of New York before he issued the rendition warrant and were available to petitioner and his counsel.
The request of the Governor of Alabama certifying the accompanying documents to be authentic and the issuance of a warrant of arrest by the Governor of the State of New York satisfy the requirements of New York law (CPL 570.08, 570.18; People ex rel. Moree v Waldron, 52 AD2d 1007). Simply stated, the failure of an indictment to supply a date of the alleged crime in an extradition proceeding does not warrant the discharge of the alleged fugitive if the date is supplied by the demanding State in another official document. (Cf. People ex rel. Grant v Doherty, 42 Misc 2d 239.) The application for release on the grounds that no date is specified in the Alabama indictment is denied.
A CRIME IN ALABAMA?
 Petitioner’s second and more intriguing contention is that he should be discharged because the acts of which he is accused in Alabama are not crimes. The District Attorney counters that this court is foreclosed from any inquiry into this issue by the recent decision of the United States Supreme Court in Michigan v Doran (439 US 282). The District Attorney misinterprets the holding of the Supreme Court.
Doran related to an attempt by Arizona to extradite an alleged fugitive in the State of Michigan on charges of auto theft, or alternatively, theft by embezzlement. The requisition by the Governor of Arizona included a complaint, judicial arrest warrant and two supporting affidavits. The Michigan Supreme Court granted Doran’s release. Michigan law requires (as does New York) that the affidavit "substantially charge” the fugitive with having committed a crime under the law of the demanding State. (Mich Comp Laws, § 780.3; CPL 570.08.) The Michigan court construed "substantially charge” to mean that there must be a showing of probable cause, and held the Arizona papers to be conclusory and insufficient to establish probable cause and granted the writ.
The United States Supreme Court reversed, ruling that under the Constitution courts of an asylum State have no power to review the finding of probable cause made by a judicial officer in the demanding State. The court pointed out *53 that probable cause for an arrest was a constitutional requirement as well as a requirement under the laws of Arizona. Writing for the majority, the Chief Justice asserted that section 2 of article IV of the Constitution relating to extradition "never contemplated that the asylum state was to conduct the kind of preliminary inquiry traditionally intervening between the initial arrest and trial.” (Doran, supra, p 288.)
The court found significant that the extradition clause, which was intended to enable each State to bring offenders to trial as swiftly as possible in the State where the alleged offense was committed, immediately followed the clause of article IV regarding "concepts of comity and full faith and credit”. (Doran, supra, p 288.)
The court clearly enunciated and limited the scope of review of a habeas corpus court once the Governor has granted extradition to: (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding State; (c) whether the petitioner is the person named in the request for extradition; (d) whether the petitioner is a fugitive.
As indicated, the District Attorney maintains that the Do-ran decision is dispositive of petitioner’s claim. In point of fact the Doran decision has little impact on New York law except perhaps for the line of cases which hold that extradition requests based on complaints and affidavits are entitled to greater scrutiny than those based on indictments (People ex rel. Gellis v Sheriff of County of Westchester, 251 NY 33; People ex rel. de Martini v McLaughlin, 243 NY 417).
Petitioner’s contention is not that there is a lack of probable cause to believe that he committed the acts alleged in the indictment. Rather, he maintains that the acts alleged do not constitute a crime. Thus the claim is not that there is inadequate grounds to believe that he committed the acts charged, but that the acts charged are not subject to criminal sanctions.
The question that must be decided, therefore, is whether this court has the power to inquire as to whether the acts of which petitioner is accused constitute a crime. Secondly, assuming that such power exists, what standards should the habeas court utilize to make that determination?
It is this court’s opinion that it has the power and obligation to make such an inquiry if properly raised. The requirement in CPL 570.08 requiring that the demanding State "substan *54 tially charge” the person demanded with a crime does not, as the Supreme Court said in Doran, allow for a review of judicially determined probable cause by the demanding State. However, it does, in my view, require the accused to be advised of the specific acts constituting the crime alleged. Without this requirement, a State seeking jurisdiction of an individual for an act which is not criminal could accomplish this unwarranted result by merely charging a violation of a penal section and nothing more. While tracking statutory language would suffice with respect to most crimes, if the statute itself is vague, then the accusatory instrument must describe the offense in greater detail. This is especially true when dealing with such acts as the Alabama "Blue Sky” law, and is a requirement of Alabama law (Manson v State, 349 So 2d 67, 74 [Ala; cf. People v Jackson, 46 NY2d 721).
Since the question arises so infrequently, there is an obvious dearth of New York law in this area. However, the case of People ex rel. Mallin v Kuh (50 AD2d 191, app dsmd 38 NY2d 982 is instructive.
In Mallín, the petitioner had been acquitted of homicide by reason of insanity and committed to a State mental institute, from which he escaped. Maine sought extradition on the escape charge. The habeas court held that since the highest court of Maine had held that an element of escape was unauthorized departure for a "criminal offense,” and since Maine required commitment for "care and treatment” after an acquittal by reason of mental disease or defect, the commitment was not for a criminal offense and the petitioner could not be charged with escape. The writ was accordingly granted (People ex rel. Mallin v Wilson, 79 Misc 2d 575).
The Appellate Division reversed. It held that the issue of whether such an escape was properly charged was an "unresolved issue of Maine law * * * a ‘nice question’ of Maine law which the Maine courts should decide”. (People ex rel. Mallin v Kuh, 50 AD2d 191, supra.)
Although it reversed the habeas court, the Appellate Division inferentially indicated that the lower court’s inquiry was proper, albeit to an erroneous conclusion. It is evident that where there is a "reasonable possibility” or a "nice question” as to whether an act is a crime, then extradition must be granted.
Conversely, what if there is no "reasonable possibility” or "nice question”?
*55 This court has not found any cases specifically addressed to this issue, but believes that the following standards are reasonable to effectuate the strong public and constitutional policy in favor of extradition balanced against the possibility of injustice in a particular case.
When an alleged fugitive claims that the act of which he is accused does not constitute a crime, he must, in order to prevail, establish conclusively that (1) statutes or decisional law of the demanding State do not establish the act as criminal; or (2) making the act alleged criminal would violate the Constitution of the United States.
To take the first test, if in Mallín (supra) the Supreme Court of Maine had ruled that escape from a mental institution after acquittal by reason of insanity was not a crime under Maine law, then the habeas should have been granted.
Under the second test, if the accused was charged with being an addict or with miscegenation, then extradition should be denied, as the act charged would be unconstitutional (Robinson v California, 370 US 660 [addict]; Loving v Virginia, 388 US 1 [miscegenation]).
Applying these tests to the three counts of the indictment (which contain the requisite specificity), petitioner has not come forward with any law from the State of Alabama indicating that the acts are not criminal.* Count I, which alleges that Lewis diverted the proceeds of securities to his own use, clearly describes actions which suggest intent to perpetrate securities fraud.
*56 Count II charges Lewis with inducing Riley to invest by misrepresenting the probable rate of return on the investment.
It could, of course, be reasonably argued that "puffing” or exaggerating the return on an investment is part of the American ethic, which, if made criminal, would unduly hamper venture capitalism. On the other hand, it could also be equated to the crime of larceny by "false promise” under section 155.05 (subd 2, par [d]) of the New York Penal Law or even "Obtaining by False Pretenses,” section 13-3-90 of the Code of Alabama. In any event this is one of those "nice questions” best left to the Alabama courts.
Count III, on the other hand, charges Lewis with reneging on his promise to refund the investment if Riley was dissatisfied. This alleges no more than a civil debt and suggests that the State of Alabama is using criminal process to enforce a civil contract, which, standing alone, would constitute a due process violation.
Where, however, an indictment contains both valid and invalid counts, the valid counts will support the demand for rendition.
There are, obviously, disturbing aspects to this proceeding. The investment which is the subject of the indictment took place in 1973 and was voted by the Grand Jury one month before the expiration of the Statute of Limitations. However, courts of an asylum State cannot assume that the fugitive will not be treated fairly in the demanding State.
The application for denial of rendition is denied. The petition is dismissed and the relator ordered returned to the State of Alabama. Petitioner, however, will be continued on bail for two weeks to obtain a stay from the Appellate Division or to apply for an investigation by the Governor pursuant to CPL 570.10.

 Petitioner’s memorandum stresses that he is by profession an inventor, not an investor, whose business transactions were carried out by an intermediary. Certainly it is true that the scope of his business and of the investments he allegedly induced to be made in it do not compare with the run of enterprises usually involved in "Blue Sky” litigation. The claim that he does not come under the statute should be raised in Alabama. But, on the merits, although of a small scale, Lewis’ activities did fall under the coverage of the Alabama securities laws. The Alabama law defines "security” as, among other items, any "investment contract” (Code of Alabama, § 8-6-2, subd [10]). Alabama case law has defined an "investment contract” as any transaction in which the investor stakes his money in a common enterprise, and expects profits from the promoter’s efforts (Gallion v Alabama Market Center, 282 Ala 679). In addition, a party who offers shares in an enterprise need not be a professional dealer in securities in order to be subject to the Alabama securities laws. The statute applies even to a seller of nonregistered securities, as long as he sells to fewer than 10 buyers (§ 8-6-11, subd [a], par [9], cl [a]). Thus Lewis’ transactions, however seemingly minor, could form the basis of an action under section 8-6-17.
The court expresses its appreciation to Susan Bennett of the Columbia Law School for her research assistance.