[L.A. 32068. May 1, 1986.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,
Respondent;
RICHARD SMOLIN et al., Real Parties in Interest.

## COUNSEL

Dennis Kottmeier, District Attorney, and Joseph A. Burns, Deputy District Attorney, for Petitioner.

John K. Van de Kamp, Attorney General, and J. Robert Jibson, Deputy Attorney General, as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Chuck Nacsin, under appointment by the Supreme Court, Dennis P. Riordan, Riordan & Rosenthal and Albert H. Maldonado for Real Parties in Interest.

## OPINION

**MOSK, J.**—Early on a morning in March 1984, Richard Smolin and his father Gerard (for convenience referred to as defendants) took Richard's two young children from a bus stop in St. Tammany's Parish, Louisiana,

and brought them to California. Three months later, the Governor of Louisiana requested that defendants be extradited to Louisiana on a charge of kidnapping. The extradition documents forwarded to California did not refer to a custody order made by a California court in February 1981 that had awarded sole custody of the children to Richard. The primary issue in this proceeding for writ of mandate is whether a California court may take judicial notice of its own custody order in determining whether Louisiana's request for extradition must be honored.

In January 1978 a California court granted Richard's petition for dissolution of his marriage to Judith Smolin (now Judith Pope), and awarded custody of the two children of the marriage to Judith, with visitation rights in Richard. Thereafter, Judith remarried; she moved with the children first to Oregon, then to Texas, and finally to Louisiana.

In October 1980 a California court, on Richard's motion, modified the original custody decree, awarding joint custody of the children to both parents on a finding that Richard had been frustrated in exercising his visitation rights because Judith had removed the children from California without notice. Judith was served in Texas with the order to show cause, as well as a copy of the modification order.

On February 13, 1981, a Texas court issued a "Judgment for Full Faith and Credit" purporting to recognize the 1978 California decree granting custody of the children to Judith. The Texas judgment was thus issued almost four months *after* California had modified its original decree by granting joint custody to both parents.

A further modification of the California decree was made by a California court in an order filed on February 27, 1981. This time Richard was awarded sole custody, after the court found that Judith had refused to allow any contacts between him and the children. Judith was served with the order to show cause regarding this proposed modification, but when an attempt was made to serve the actual modification order on her, it was at first unsuccessful because she had moved and left no address. She was eventually served with the order in Louisiana in February 1984, the month before the alleged kidnapping occurred.

Defendants took the children on March 9, 1984. Three days later an assistant district attorney in St. Tammany's Parish, Louisiana, filed an information charging defendants with two counts of kidnapping in violation of section 14:45 of the Louisiana Revised Statutes (hereinafter R.S.A. § 14:45). Subdivision (4) of that statute prohibits the "intentional taking . . . and removing from the state, by any parent, of his or her child, from

the custody of any person to whom custody has been awarded by any court of competent jurisdiction of any state, without the consent of the legal custodian, with intent to defeat the jurisdiction of the said court over the custody of the child." Warrants of arrest were issued the next day by a Louisiana judge, based on the filing of the information.

Seven weeks later, on April 30, 1984, Judith filed an affidavit before a judge in Louisiana, reciting that defendants had kidnapped the children from a bus stop on March 9, 1984, at 7:30 a.m., and naming the witnesses who saw the purported abduction. The affidavit asserted that Judith had custody of the children by virtue of the February 1981 Texas full faith and credit judgment. It did not mention the prior California decree granting joint custody or the later California order that granted Richard sole custody. The record indicates that, like Judith, the assistant district attorney who filed the information knew of the California orders at the time the information was filed.[1]

Judith returned to California to recover custody of the children; she thereby submitted to the jurisdiction of California courts. Following three days of hearings in May 1984, the California court affirmed the February 27, 1981, order granting sole custody to Richard, with reasonable visitation rights in Judith.

The Governor of Louisiana issued a warrant of extradition on June 14, 1984. The request was accompanied by Judith's affidavit, the arrest warrants, the information, and an "Application for Requisition" signed by an assistant district attorney in Louisiana requesting the Governor to seek extradition.[2]

---

[1] A declaration filed by Gerard Smolin's attorney in support of his petition for habeas corpus, describes a telephone conversation with the Louisiana assistant district attorney. According to the declaration, the Louisiana attorney admitted that he knew at the time of the alleged kidnapping that Richard "was entitled to custody of the minor children . . . by virtue of a California custody decree." However, he believed nevertheless that a crime had been committed because "he viewed the California judgment as being void, having been obtained by fraudulent misrepresentations, and the valid order having been that issued by Texas on February 13, 1981." The Louisiana attorney filed a counterdeclaration, but he did not deny that he made these statements.

[2] Also included with the extradition documents were a petition filed in Louisiana by Judith on March 9, 1984, following the alleged kidnapping, seeking a restraining order to prevent Richard from removing the children from Louisiana and an order to award custody to Judith, as well as an order signed by a judge granting the relief sought. The petition, which was unsigned, alleged that Richard had kidnapped the children, that Judith had custody by virtue of the California dissolution decree granting her such custody, which was recognized by the Texas full faith and credit judgment of February 13, 1981, that the Texas decree had not been abrogated by proper legal process, that Richard had failed to support the children for three years, and that Judith's husband had pending in Louisiana a petition to adopt them.

In August 1984, defendants filed separate petitions for writs of habeas corpus in the San Bernardino Superior Court, alleging that they were in imminent danger of arrest because the office of Governor Deukmejian had indicated that he was about to issue warrants of extradition. The petitions set forth the facts recited above regarding the California custody decrees, and included some supporting documents. In their points and authorities, defendants urged the trial court to take judicial notice of the California custody orders. They asserted that those orders establish that Richard had custody of the children under federal law, the Parental Kidnapping Prevention Act of 1980 (28 U.S.C.A. § 1738A, hereinafter PKPA), and that because custody was with Richard he could not be guilty of kidnapping under Louisiana law. The trial court, which had previously granted a writ of prohibition to prevent enforcement of the Louisiana warrants, issued orders to show cause directed to Governor Deukmejian, the District Attorney of St. Tammany's Parish, and the Sheriff of San Bernardino County, directing them to bring the warrants of extradition before the court to determine the facts and law relating to the threatened imprisonment. The return, which was accompanied by warrants of rendition issued by Governor Deukmejian, contended that extradition was required because the documents submitted by Louisiana with the request were regular on their face and charged a crime under Louisiana law, and that the trial court had no authority to go beyond the face of the documents to consider the effect of the California decrees or the sufficiency of Judith's affidavit.

Following a hearing during which the court took judicial notice of the California family law file, the court found in favor of defendants. It read into the record statements made by the trial judge during the May 1984 custody proceeding that were critical of Judith's conduct in a number of respects, such as her refusal to allow Richard to have contact with the children.[3] The court concluded that the State of Louisiana had failed to demonstrate that it had any rights with respect to the extradition of defendants.[4] It therefore granted the writs of habeas corpus and discharged defendants.

The People now seek a writ of mandate to vacate these orders. They primarily contend that the trial court erred in considering the California

[3]The same trial judge presided over the May 1984 proceeding (which affirmed the earlier order granting sole custody to Richard) and the habeas corpus proceeding. The People did not make a motion to disqualify the judge on this ground, although they were invited to do so by the court.

[4]The judge stated, "The court would conclude that the findings in the family law case adequately demonstrate that, in fact, the process initiated by Mrs. Pope in Louisiana and her declarations and affidavits were totally insufficient to establish any basis for rights of either herself personally or for the State, in an interest of the State of Louisiana."

family law file in support of its determination, and in particular the California orders awarding custody of the children to Richard.

■ Under the extradition clause of the United States Constitution (art. IV, § 2, cl. 2), a person charged with crime who flees from justice and is found in another state must, on demand, be delivered to the state having jurisdiction of the crime. The word "demand" in the constitutional provision denotes an "absolute right" to obtain extradition, thereby implying a "correlative obligation to deliver, without any reference to the character of the crime charged, or to the policy or laws of the State to which the fugitive has fled." (*Kentucky* v. *Dennison* (1861) 65 U.S. 66, 103 [16 L.Ed. 717, 728]; *State of South Dakota* v. *Brown* (1978) 20 Cal.3d 765, 768-769 [144 Cal.Rptr. 758, 576 P.2d 473].) ■ Interstate extradition is intended to be a summary proceeding designed to bring offenders to trial as swiftly as possible in the state where the offense was committed. (*Michigan* v. *Doran* (1978) 439 U.S. 282, 287-288 [58 L.Ed.2d 521, 526-527, 99 S.Ct. 530].) Therefore, a court in the asylum state, considering an application for a writ of habeas corpus to resist extradition, is limited in the scope of its inquiry: it may not inquire into the credibility of the affiant on whose declaration the charge is based (*Jacobsen* v. *State* (1978) 99 Idaho 45 [577 P.2d 24, 28]) or into the guilt or innocence of the person sought by the demanding state (*In re Kimler* (1951) 37 Cal.2d 568, 571 [233 P.2d 902]; *In re Murdock* (1936) 5 Cal.2d 644, 648 [55 P.2d 843]; Pen. Code, § 1553.2).

*Michigan* v. *Doran,* holds that once the governor of the asylum state has granted extradition, a court considering release on habeas corpus can do no more than decide "(a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive." The high court added that these "are historic facts readily verifiable." (439 U.S. at p. 289 [58 L.Ed.2d at p. 527].)[5]

Many states, including Louisiana (La. Code Crim. Proc., art. 261 et seq.) and California (Pen. Code, § 1548 et seq.) have adopted the Uniform Criminal Extradition Act to facilitate their duty to extradite persons charged with crime by another state. ■ Under the uniform act as adopted in Califor-

---

[5]In *Michigan* v. *Doran,* the Supreme Court considered a request by Arizona to Michigan to extradite a person accused of a crime committed in Arizona. The Michigan court found the Arizona request deficient because, in its view, the supporting documents did not demonstrate probable cause for charging the petitioner with a crime, despite a statement by the Arizona judge that such a finding had been made. The high court reversed, holding that when a neutral judicial officer of a demanding state has made a finding of probable cause, no further judicial inquiry may be had on that issue in the asylum state.

nia, a demand for extradition of a person charged with crime must be recognized if it alleges that the accused was present in the demanding state at the time the crime was committed and fled therefrom. The demand must be accompanied by an indictment, information, or an affidavit made before a magistrate in the demanding state (with a copy of a warrant issued thereon), which substantially charges a crime under the law of the demanding state. (Pen. Code, § 1548.2.)[6]

■ Defendants admit that they are the persons whose extradition is sought by Louisiana, and that they left that state with the children. They claim, however, that Louisiana has not substantially charged them with a crime, and they were therefore entitled to be discharged. They reason as follows: Under the Louisiana statute relied on by the People, a parent may not be charged with kidnapping a child if he is entitled to custody, and the California decree demonstrates that Richard was entitled to custody of the children at the time of the alleged kidnapping. In deciding whether defendants had been substantially charged with a crime, the trial court was authorized to take judicial notice of the California decree and to recognize its binding effect under the PKPA.

As a preliminary matter, we note that the basis of the trial court's ruling in favor of defendants is not altogether clear. (See fn. 4, *ante.*) We agree with defendants, however, that the court's remarks at the conclusion of the hearing may be fairly construed as a finding that Louisiana had not substantially charged them with a crime, and we proceed with our discussion on that assumption.

We concur also in defendants' assertion that under Louisiana law a parent entitled to the custody of a child cannot be found guilty of kidnapping. The language of subdivision (4) of R.S.A. § 14:45 defines the crime as taking a child "from the custody of any person to whom custody has been awarded by any court of competent jurisdiction of any state." Thus, in order to charge a crime under the statute the person deprived of custody must have been awarded custody by such a court. And it has been held in Louisiana that a father who shares equal custody rights with the mother cannot be found guilty of kidnapping under this statute when he takes a child without the permission of the mother. (*State* v. *Elliott* (1930) 171 La. 306 [131 So. 28, 30].)

---

[6]The uniform act as adopted in California and other jurisdictions requires that the papers must "substantially charge" a crime under the law of the demanding state. *Michigan* v. *Doran,* in setting forth the requirements for extradition, omits the word "substantially." The opinion in that case explains that the term derives from earlier decisions of the United States Supreme Court. (439 U.S. at p. 285, fn. 4 [58 L.Ed.2d at p. 525].) We shall refer to this requirement in the manner set forth in the uniform act and our own statute.

There is a problem at the threshold of our analysis. The courts of this state may not inquire into the guilt or innocence of the person whose extradition is sought (Pen. Code, § 1553.2), but may deny extradition if the demanding state has not substantially charged that person with a crime (*id.*, § 1548.2). ■ We must first decide, therefore, whether defendants' challenge to the sufficiency of the extradition request amounts to a claim that they are innocent of kidnapping, or whether their assertion may properly be characterized as a claim that Louisiana has not substantially charged them with a crime.[7]

The difference between these issues is somewhat elusive, because they may be interrelated.[8] We think, however, that when as here the extraditee admits that he has performed the acts with which he is charged but claims, for reasons independent of his own conduct or state of mind, that those acts do not amount to the commission of a crime under the laws of the demanding state, the gravamen of his assertion is that no crime was charged against him. (See *People* ex rel. *Lewis* v. *Com'r. of Correction* (1979) 100 Misc.2d 48 [417 N.Y.S.2d 377, 380-382].) To illustrate: if the Louisiana extradition papers had been accompanied by a custody decree which showed that custody was in Richard, it seems clear that defendants could properly claim they had not been substantially charged with a crime under Louisiana law.

A charge of crime is deemed not to be substantial if, for example, the statute under which the demanding state makes the charge has been declared unconstitutional by the highest court of that state or the United States Supreme Court (*In re Cooper* (1980) 53 Cal.2d 772, 779-780 [3 Cal.Rptr. 140, 349 P.2d 956]), the statement of the charge does not fall within the demanding state's statutory definition of the crime (*In re Katcher* (1952) 39 Cal.2d 30, 31-32 [243 P.2d 785]), or the acts charged do not constitute a crime under the law of the demanding state (*Application of Varona* (1951) 38 Wn.2d 833 [232 P.2d 923, 924]; *People* ex rel. *Lewis* v. *Com'r. of Correction, supra,* 417 N.Y.S.2d 377, 380-382). In *Varona,* California sought extradition of a person it charged with feloniously taking money from a partnership of which he was a member. Extradition was denied for failure to substantially charge a crime because under California law a partner could not be held guilty of misappropriating partnership funds. So here, defendants assert they are not substantially charged with violating Louisiana's kidnapping statute because it provides that the person from whose

---

[7]For the purpose of considering this preliminary question we shall assume that the trial court here acted correctly in taking judicial notice of the California custody ruling.

[8]It would ordinarily follow from the fact that a crime was not substantially charged that the person against whom the attempted charge was made was not guilty of its commission. But the converse, of course, is not true: from the fact that a person may be found not guilty of a crime it does not follow that the crime itself was not substantially charged.

custody a child is taken must have been awarded custody by a court of competent jurisdiction, and it is Richard rather than Judith who was entitled to custody at the time of the alleged kidnapping.[9]

Thus far we have concluded that, assuming the California decree was properly considered by the trial court, defendants' assertion based thereon raised the issue whether Louisiana had substantially charged them with the crime of kidnapping.

■ A more difficult question is whether the trial court had the power to consider the California sole custody decree to support its determination that Louisiana had failed to substantially charge defendants with a crime.[10] Under the Evidence Code, a court must take judicial notice of the records of any court of this state, upon proper notice to the court and the adverse party. (Evid. Code, §§ 452, subd. (d)(1), 453.) The People claim that this requirement cannot be applied in an extradition proceeding. Relying on the rule that only relevant evidence is admissible by judicial notice (*Mozzetti* v. *City of Brisbane* (1977) 67 Cal.App.3d 565, 578 [136 Cal.Rptr. 751]), they assert that the California order is not relevant to the only issue before the court, which they characterize as whether the documents submitted by Louisiana support its extradition demand, in the light of Louisiana law.

While the foregoing contention is ingenious, its force depends on the resolution of the main issue involved in this proceeding in favor of the People, namely, their claim that in determining whether a crime is charged the courts of an asylum state may not go beyond the face of the extradition documents (and the law of the demanding state) by taking judicial notice of their own orders.

---

[9]We recognize that some cases hold that the asylum state must leave the determination of whether the laws of the demanding state render the extraditee's conduct a crime to the laws of that state. (E.g., *Hopper* v. *State* ex rel. *Schiff* (1984) 101 N.M. 71 [678 P.2d 699, 701].) Here, however, the Louisiana statute on its face provides that this type of kidnapping may be committed only by a parent who lacks custody. The extradition papers implicitly recognize that custody in Judith is a necessary predicate to the charge: the Governor's extradition request and Judith's affidavit both rely on the Texas full faith and credit judgment as granting her custody. In these circumstances, defendants are claiming that the charge is void on its face (cf. *In re Cooper, supra,* 53 Cal.2d 772, 779-780) and "lacking altogether" in a "reasonable basis" (*In re Katcher, supra,* 39 Cal.2d 30, 31). In a case decided after *Michigan* v. *Doran,* it was held that the courts of New York, the asylum state, had the power to inquire whether the act alleged against the extraditee constituted a crime under the laws of the demanding state to the extent that he claimed that the statutory or decisional law of that state did not establish the act as criminal, or that to make the act criminal would violate the United States Constitution. (*People* ex rel. *Lewis* v. *Com'r. of Correction, supra,* 417 N.Y.S.2d 377, 379-380.)

[10]We need not decide whether the court properly took judicial notice of the entire family law file, including statements of the trial judge which were critical of Judith's conduct. It is sufficient for our purposes to limit consideration to the custody orders made by the California court.

The People cite no convincing authority for this proposition. *Michigan* v. *Doran* holds that the asylum state in a habeas corpus proceeding must decide "whether the petitioner has been charged with a crime in the demanding state" (439 U.S. at p. 289 [58 L.Ed.2d at p. 527]), but it does not give any guidance as to the matters which may be considered in making that determination. Other cases contain language in support of the People's position, but none of them involves the question we are confronted with here. *United States* v. *Flood* (2d Cir. 1967) 374 F.2d 554, 556, upon which the People primarily rely, did not relate to a claim that the extradition papers failed to charge the petitioner with a crime. Rather, the issue there was the sufficiency of the affidavit attached to the extradition warrant because it was based on hearsay evidence, and the court concluded that the persuasiveness of the affidavit was not a subject on which the courts of the asylum state could pass judgment.[11] *Moncrief* v. *Anderson* (D.C.Cir. 1964) 342 F.2d 902, states in dictum in a footnote only that the question whether a valid charge has been made "can" be determined from the extradition papers (fn. 3 at p. 904), not that it must be. *Roberts* v. *Reilly* (1885) 116 U.S. 80, 95-96 [29 L.Ed. 544, 549, 6 S.Ct. 291], also contains broad language which leans toward the position of the People, but again the court's holding does not appear to relate to the problem at hand.[12] Finally, in *In re Harper* (1936) 17 Cal.App.2d 446, 448 [62 P.2d 390], the court, relying on the language of *Roberts* v. *Reilly,* held that it was "apparent" from the requisition and statute of the demanding state that a crime had been charged.[13]

---

[11]The decision, in assessing the claim of hearsay, concludes: "But, in considering the sufficiency of the extradition warrant and the papers accompanying it . . . it is not for the asylum state on habeas corpus to pass upon the quality, persuasiveness or weight of the evidential matter on the basis of which the Governor of Florida issued the extradition warrant, for it is solely a question of law whether on the face of the papers accompanying the warrant there was sufficient to say that a crime was 'substantially charged' . . . under the laws of Florida and that he was alleged to be a fugitive." (374 F.2d at p. 556.)

[12]The opinion states that the question whether a person is substantially charged with a crime is a question of law which "is always open upon the face of the papers to judicial inquiry." (116 U.S. at p. 95 [29 L.Ed. at p. 549].) Later, the court rejects the petitioner's claim that the indictment did not substantially charge larceny because it did not state that the corporation from whose possession the property was taken was capable of ownership under the law of the demanding state. This issue, states the court, "is not matter of law arising upon the face of the indictment, but can arise only at the trial upon the evidence, if the question should then be made. The averment in the indictment is the allegation of a fact which does not seem to be impossible in law, and is, therefore, traversable." (*Id.,* at p. 96 [29 L.Ed. at p. 549].) This language is not altogether clear, but we read the court's holding to mean that the courts of an asylum state are foreclosed from inquiring whether the law of the demanding state renders the actions alleged in the indictment a crime. The People concede that this is not the law as it stands today. Indeed, they insist that such an inquiry is necessary to provide a legal frame of reference for deciding whether a crime has been charged.

[13]The petitioner in *Harper* attempted to raise matters outside the scope of the requisition papers in support of his claim that a charge had not been made against him. The court rejected this attempt on the ground that the matters which petitioner raised went to the question of guilt or innocence, an issue which the court was foreclosed from investigating.

We perceive no valid reason for fashioning an exception to the requirements of the Evidence Code by creating a rule that a court may not take judicial notice of its own orders in considering a habeas corpus petition in an extradition proceeding. Recognition of such orders does not violate the principle that an asylum state may not apply its own laws in deciding whether the conduct charged amounted to a crime, because it results only in an acknowledgement of the existence of the orders rather than an assessment of their effect on the charge. Moreover, such a ruling is in complete harmony with the statement in *Michigan* v. *Doran* which describes the matters that the courts of an asylum state may consider in habeas corpus extradition proceedings as "historic facts readily verifiable." (439 U.S. at p. 289 [58 L.Ed.2d at p. 527].) Certainly, the fact that a court has made a particular order is at least as verifiable as the other matters referred to in the Supreme Court's opinion, such as whether the petitioner is a fugitive from justice. Lastly, as we shall see, judicial notice in this context does not infringe on the governmental interests at stake in an extradition proceeding.

We conclude that the trial court acted properly when it took cognizance of the California sole custody order in making its determination that the extradition papers did not charge a crime. So far as we are aware, the validity of that order had never been challenged by either Judith or Louisiana at the time the alleged kidnapping occurred. If such a challenge may be implied from Louisiana's reliance on the intervening Texas judgment, purportedly based on full faith and credit, we do not hesitate to support defendants' claim that the California decree prevails.

There is no jurisdictional obstacle to our consideration of this issue. The question is one of federal law, as expressed in the PKPA, which preempts state law on the issue of jurisdiction by a state to render a valid custody decree. (*State* ex rel. *Valles* v. *Brown* (1981) 97 N.M. 327 [639 P.2d 1181, 1184].) The courts of California are not precluded from assessing the effect of that law on the controversy. In *In re Cooper, supra,* 53 Cal.2d 772, 779-782, we analyzed the effect of decisions of the United States Supreme Court in determining whether the Pennsylvania statute under which the petitioners were charged was void on its face. (Accord, *People* ex rel. *Lewis* v. *Com'r. of Correction, supra,* 417 N.Y.S.2d 377, 381.)

The PKPA provides that "every State shall enforce according to its terms, and shall not modify . . . any child custody determination made consistently with the provisions of this section by a court of another State." (28 U.S.C.A. § 1738A(a).) A state has jurisdiction to make a custody order if such jurisdiction exists under its own laws and it is the home state of the child at the time the order is made. (*Id.,* subds. (c)(1), (c)(2)(A).) The term "home state" is defined as the one in which, "immediately preceding the

time involved, the child lived with his parents . . . for at least six consecutive months . . . ." (*Id.*, subd. (b)(4).) Modification of a custody order valid under this standard may be made only by the court which originally rendered the decree, except in circumstances not relevant here.[14]

The original decree issued by California in 1978 granting custody of the children to Judith must be conceded by the People to have been valid when it was made, since Judith's claim to custody, a necessary predicate to the kidnapping charge under Louisiana law, has its origin in that decree. On the face of the record, therefore, only California had jurisdiction to modify that decree.

The Texas judgment, filed on February 13, 1981, which purported to give effect to the 1978 custody order rendered in California, was preceded by almost four months by the California order of October 20, 1980, modifying the original judgment to grant joint custody of the children to both parents. More important, on February 27, 1981, a court of this state—the only court with jurisdiction to modify the decree—granted sole custody to Richard. Thus, when Louisiana filed the information on March 12, 1984, charging petitioners with kidnapping on the premise that the Texas judgment was the act of a "court of competent jurisdiction" which had granted custody of the children to Judith (R.S.A. § 14:45), that decree had long been superseded by the February 27, 1981, California sole custody order.[15]

We are mindful of the duty of our courts to faithfully and vigorously enforce the constitutional provision requiring extradition, and we recognize that our obligation in this regard should not be "so narrowly interpreted as to enable offenders against the laws of a State to find a permanent asylum" in California. (*Appleyard* v. *Massachusetts* (1906) 203 U.S. 222, 228 [51 L.Ed. 161, 163, 27 S.Ct. 122].) But we cannot ignore the fact that extradition represents a "significant pretrial restraint of liberty." (*Ierardi* v. *Gunter* (1st Cir. 1976) 528 F.2d 929, 930.) The important gov-

---

[14]For example, a state which is not the home state of the child may modify a custody decree if neither the child nor a contestant lives in the home state at the time the modification is sought, or if the home state no longer has jurisdiction (*id.*, subd. (d)) or has declined to exercise jurisdiction (*id.*, subd. (f)).

[15]The decree of a Louisiana court issued on March 9, 1984, following the alleged kidnapping (see fn. 2, *ante*), may not be deemed an order binding on California. The PKPA grants a court jurisdiction to make an emergency custody order if a child is physically present in the state at the time of the order and it is necessary to protect the child because he has been subjected to or threatened with mistreatment or abuse. (28 U.S.C.A. § 1738A(c)(2)(C).) Even if this provision could be applied to the March 9 order, there is no indication that the children were present in Louisiana when the order was issued or that defendants were served with the order prior to leaving the state with the children. Moreover, the Louisiana Governor's warrant was based not on defendants' violation of the order of the Louisiana court, but on existence of the Texas full faith and credit judgment.

ernmental interests at stake in the prompt execution of extradition requests are comity between the states and efficiency in bringing fugitives to justice. (*Ibid.*) These interests are not jeopardized by our holding. Since Louisiana would be compelled under the terms of the PKPA to take judicial notice of the California order, there is no justification for withholding recognition by a California court.[16] Furthermore, the effect of the order must be decided under federal law rather than Louisiana law. This is a determination which the courts of California are empowered to make. Thus, the efficiency of the extradition process is enhanced rather than hampered by a resolution of the issue by a California court. (Cf. *Ierardi,* at p. 931.)[17]

■ Under all the circumstances, we conclude that the trial court did not err in deciding that defendants had not been substantially charged with a crime by Louisiana. While we feel compelled to express our disapproval of the self-help manner in which defendants chose to enforce Richard's right to custody, we hold nevertheless that defendants were entitled to be discharged.[18]

The alternative writ is discharged, and the petition for writ of mandate is denied.

Bird, C. J., Broussard, J., Reynoso, J., Grodin, J., and Todd (Kathryn Doi), J.,* concurred.

**LUCAS, J.**—I respectfully dissent to the majority's holding that "defendants [have] not been substantially charged with a crime in Louisiana." My colleagues have ignored the limitations on an asylum state's powers of judicial examination in extradition proceedings established by the United States Supreme Court in *Michigan* v. *Doran* (1978) 439 U.S. 282 [58 L.Ed.2d 521, 99 S.Ct. 530].

In *Michigan* v. *Doran,* the high court held that only four matters may be considered by a court in the asylum state reviewing a request for release on

---

[16]The PKPA contemplates that the courts of each state will take judicial notice of the custody orders issued in other jurisdictions because a determination whether a foreign decree is consistent with the federal law may be made only if the existence of the foreign decree is acknowledged.

[17]In *Ierardi* the court decided that the efficiency of the extradition process was not significantly diminished by its holding that if the courts of the demanding state failed to determine whether there was probable cause to charge the petitioner the courts of the asylum state may do so.

[18]Defendants' motion of October 3, 1985, to augment the record on appeal, is denied.

*Judge, Los Angeles County Superior Court, assigned by the Chairperson of the Judicial Council.

habeas corpus. Those matters are derived from the extradition clause[1] of the United States Constitution (art. IV, § 2, cl. 2) and from 18 United States Code section 3182[2] implementing the extradition clause. The court explained that "[w]hatever the scope of discretion vested in the governor of an asylum state . . ., the courts of an asylum state are bound by Art. IV, § 2, cf. *Compton* v. *Alabama*, 214 U.S. 1, 8 (1909), by § 3182, and, where adopted, by the Uniform Criminal Extradition Act. A governor's grant of extradition is prima facie evidence that the constitutional and statutory requirements have been met. . . . Once the governor has granted extradition, a court considering release on habeas corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive." (439 U.S. at pp. 288-289 [58 L.Ed.2d at p. 527].)

Because defendants admit that they are the persons who took the children and whose extradition is sought by Louisiana, the only remaining questions are "whether the extradition documents on their face are in order" and "whether the petitioner has been charged with a crime in the demanding state." The extradition documents *on their face* are in order, and defendants therefore confine their argument to a claim that they are not substantively charged with a crime.

The majority correctly notes that although California courts cannot inquire into the guilt or innocence of a person whose extradition is sought (Pen. Code, § 1553.2), nonetheless extradition documents must "substantially charge the person demanded with having committed a crime" under the laws of the demanding state. (*Id.,* § 1548.2.) (*Ante,* p. 767.) My colleagues, however, confuse the question of whether defendants are *substantially charged* with a crime with the question of whether defendants are

---

[1] "A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up to be removed to the State having Jurisdiction of the Crime."

[2] "Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged."

*innocent.* Whether a person is substantially charged with a crime against the laws of the demanding state "is a question of law and is always open *upon the face of the papers* to judicial inquiry, on an application for a discharge under a writ of habeas corpus." (*Roberts* v. *Reilly* (1885) 116 U.S. 80, 95 [29 L.Ed. 544, 549, 6 S.Ct. 291], italics added.) "Any other judicial inquiry in the asylum state into the matter exceeds the court's jurisdiction. [Citations.]" (*In re Fabricant* (1981) 118 Cal.App.3d 115, 120 [173 Cal.Rptr. 245].) By going beyond the "face of the papers," my colleagues probe too far.

The majority notes that *People* ex rel. *Lewis* v. *Com'r. of Correction* (1979) 100 Misc.2d 48 [417 N.Y.S.2d 377, 379-380], held that the asylum state may inquire whether the act alleged in the extradition papers constitutes a crime according to the statutory and decisional law of the demanding state. (*Ante,* p. 768, fn. 9.) This inquiry is necessary in order to discover whether the extradition papers substantially charge the person demanded with having committed a crime under the laws of the demanding state. (See Pen. Code, § 1548.2.) For example, in *Application of Varona* (1951) 38 Wn.2d 833 [232 P.2d 923], a case cited by the majority, the extradition documents indicated that defendant was a partner charged with stealing money from his own partnership. (*Ante,* p. 767.) Examination of the statutory and decisional law of the demanding state (California) revealed that the act charged was not in the abstract a crime under California law at that time.[3] When defendants in the instant case argued that the extradition documents did not substantially charge them with the crime of kidnapping because they had authority to take the child, they asked the court to look beyond the extradition documents and the statutory and decisional law of both Louisiana and California to determine the status of the alleged crime in general. Instead, they requested that the court take cognizance of a particular document to determine whether they, *individually,* were "charged with a crime." That requested consideration clearly involved contemplation of an individual *defense* to an otherwise permissible charge, something the court has no power to examine in extradition proceedings. In sum, defendants are arguing their innocence, not challenging the sufficiency of the extradition request. The California custody order that they offer thus supports an affirmative defense which may be considered only by the Louisiana court, not the California court.

My colleagues conclude that their holding here is in "complete harmony" with *Michigan* v. *Doran, supra,* 439 U.S. 282, because a custody ruling is "at least as verifiable as the other matters referred to in the Supreme Court's

---

[3]A later California case, *People* v. *Sobiek* (1973) 30 Cal.App.3d 458 [106 Cal.Rptr. 519], held that a partner may be guilty of embezzling or stealing partnership property.

opinion. . . ." (*Ante,* p. 770.) The majority has put the cart before the horse. What the Supreme Court in *Michigan* v. *Doran* held was that there are *only four matters* that can be considered in habeas corpus extradition proceedings. Although the high court added that these four matters "are historic facts readily verifiable" (439 U.S. at p. 289 [58 L.Ed.2d at p. 527]), it did not hold that a court may consider any *other* matters (such as asylum state custody rulings or defenses to the crime charged) which may also be considered "historic facts readily verifiable." The four areas of inquiry described by the court were not merely illustrative. They were meant to define and restrict the actual boundaries of permissible inquiry. Thus, the trial court clearly exceeded its jurisdiction in considering the California custody ruling because that was *not* a matter falling under one of *Michigan* v. *Doran*'s four categories.

Interstate extradition is meant to be a summary executive proceeding; the extradition clause "never contemplated that the asylum state was to conduct the kind of preliminary inquiry traditionally intervening between the initial arrest and trial." (*Michigan* v. *Doran, supra,* 439 U.S. at p. 288 [58 L.Ed.2d at p. 527].) Under the constitutional provision, extradition is not a matter of mere comity, but instead is an absolute right of the demanding state and a duty of the asylum state. (*In re Russell* (1974) 12 Cal.3d 229, 234 [115 Cal.Rptr. 511, 524 P.2d 1295].) "[A]n asylum state does not refrain from undertaking an examination of a fugitive's guilt merely to avoid procedural delays or complications in the rendition procedure. Rather it does so in recognition of the principle that such an inquiry ' "into the merits of the charge against the prisoner or into the motives which inspired the prosecution in the demanding State . . . exceeds its authority under the constitutional and statutory provisions regulating the extradition of criminals. The mandate of the Constitution requires 'a person *charged* in any State with a crime' to be delivered by the asylum State to the State whose laws he has violated. That State alone can determine the guilt or innocence of the offending party." ' (*In re Kimler, supra,* 37 Cal.2d at p. 572 [233 P.2d 902].)" (*In re Golden* (1977) 65 Cal.App.3d 789, 795-796 [135 Cal.Rptr. 512].) The majority and trial court here have completely ignored the constitutional and statutory limitations on an asylum state's role in requests for extradition.

As noted, Richard's claim of entitlement to sole custody of his children based on a 1981 California custody order[4] is an affirmative defense to the

---

[4] On April 11, 1984, in California, Judith initiated an order to show cause to set aside the custody order of February 11, 1981, which awarded sole custody to Richard. The trial court reaffirmed the 1981 order on May 31, 1984. Judith appealed, and the Court of Appeal on rehearing on February 25, 1986, reversed the 1984 order and remanded the matter for further proceedings. Although there now exists a question about the *current* validity of

kidnapping charge, which must be asserted in a Louisiana court. The asylum state, California, was without jurisdiction to inquire into the guilt or innocence of the person whose extradition was sought; that decision may be reached only by the demanding state. (Pen. Code, § 1553.2; *In re Russell, supra,* 12 Cal.3d at pp. 233-234.) For the foregoing reasons I would hold that the trial court erred in taking judicial notice of the California custody order, and I would grant the petition for writ of mandate.

Petitioner's application for a rehearing was denied June 5, 1986. Lucas, J., and Panelli, J., were of the opinion that the application should be granted.

---

Richard's 1981 custody order, the order apparently was valid on March 9, 1984, when Richard took his children from Louisiana. In my opinion, the custody order and its questioned validity are not in any event relevant to the resolution of this extradition case, however, because the custody order is not a matter that can be considered in habeas corpus extradition proceedings pursuant to *Michigan* v. *Doran.*