IN the INTEREST OF A.E.H., a person under the age of 18: P.C., and J.H., Appellants-Cross Respondents, †

v.

C.C., Respondent-Cross Appellant.

Court of Appeals

*No. 88-2022. Submitted on briefs June 22, 1989.—Decided August 1, 1989.*

(Also reported in 448 N.W.2d 662.)

---

† Petition to review granted.

---

185

For appellants-cross respondents, there were briefs by *Lee Erlandson,* of Madison.

For respondent-cross appellant, there were briefs by *Michael R. Fitzpatrick* of *Brennan, Steil, Basting & MacDougall, S.C.,* of Janesville.

For the guardian ad litem there was a brief filed by *Daniel T. Dillon* of *Nowlan & Mouat,* of Janesville.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. P.C. and J.H. appeal an order dismissing a custody action on the basis the court lacked subject matter jurisdiction. The issue is whether the doctrine of collateral estoppel bars the relitigation of the jurisdiction question because the circuit court earlier determined that it had subject matter jurisdiction in a guardianship action and a termination of parental rights (TPR) action involving the same parties. We conclude that collateral estoppel does not bar relitigation, and we affirm the order of dismissal.

A.E.H. was born to C.C. and H.H. in California on August 2, 1983. The father and mother never married and did not cohabitate after the child's birth. The child resided with her mother in California from birth until May, 1984. From May, 1984, until May, 1985, she resided with her maternal grandfather and his wife in

Missouri while her mother was on duty at sea with the United States Navy. During that year, the child visited relatives in Wisconsin, including J.H. and P.C., her maternal aunt and uncle.

The child resumed residence in California with her mother in May, 1985. On February 23, 1986, her mother was murdered and she was taken into the custody of the Santa Clara County, California, juvenile authorities. The child's relatives, including her aunt and uncle, sought temporary custody of her. Because the Santa Clara Juvenile Court believed that the child's father was unknown, the court placed physical custody with the aunt and uncle who returned to Wisconsin with the child. She has resided here since February 26, 1986.

On March 17, 1986, the aunt and uncle petitioned for guardianship of the child in Rock County, Wisconsin. Judge John Lussow granted them temporary guardianship. On April 1, 1986, the father filed a paternity and custody action concerning the child in San Bernardino County, California.

After a telephone conference between the California and Wisconsin trial courts, each court issued simultaneous rulings. The court in Rock County ruled that Wisconsin had subject matter jurisdiction under sec. 822.03(1)(b), (c) and (d), Stats. (1985–86),[1] the Uniform

---

[1] Section 822.03(1) provides:

**Jurisdiction.** (1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(a) This state is the home state of the child at the time of commencement of the proceeding, or had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this state because of the child's removal or retention by a person claiming custody or for other reasons, and a parent or person acting as parent continues to live in this state; or

(b) It is in the best interest of the child that a court of this

Child Custody Jurisdiction Act (UCCJA), to make child custody determinations concerning the child. It ordered that the proceedings in California be stayed and directed that court to cease any further action concerning the child. On the other hand, the California court ruled, among other things, that California had jurisdiction over the custody of the child under sec. 822.03(1)(a) and (b) [2] of the UCCJA; that California had invoked jurisdiction in February, 1986; that California never declined jurisdiction; and that Wisconsin should not assume jurisdiction. It awarded temporary custody of the child to her father. On June 26, 1986, Rock County held a guardianship hearing where the father appeared specially, objecting to the court's subject matter jurisdiction. The court continued with the hearing and appointed the aunt and uncle permanent guardians of the child.

On November 26, 1986, the aunt and uncle filed an action in Rock County to terminate the father's parental rights. In response, the father filed a motion to dismiss

state assume jurisdiction because the child and the child's parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

(c) The child is physically present in this state, and the child has been abandoned or it is necessary in an emergency to protect the child because the child has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

(d) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with par. (a), (b) or (c), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction.

[2]Both California and Wisconsin have adopted the Uniform Child Custody Jurisdiction Act. The sections cited in this opinion are the Wisconsin statutes (1985–86).

the action, again arguing that Wisconsin lacked subject matter jurisdiction. Judge Patrick Rude denied the motion to dismiss, concluding that Wisconsin had jurisdiction because Judge Lussow's jurisdiction decree in the guardianship case was res judicata as to the jurisdiction issue. Judge Rude also made his own determination that Wisconsin had jurisdiction under the UCCJA because Wisconsin was the child's "home state." *See* sec. 822.03(1)(a), Stats.

The TPR trial in Wisconsin took place on May 16, 1987. The jury found C.C. to be the father of the child and concluded that there were no grounds to terminate his parental rights. Following those proceedings, the aunt and uncle filed a custody motion in Rock County, claiming they should be awarded custody of the child even though the father's parental rights were not terminated.

The October, 1987, custody proceedings initiated by the father were held in California. The aunt and uncle participated in those proceedings through their attorney. The issue was raised as to whether California did, in fact, have "home state" jurisdiction of the child. The court found that California did have jurisdiction and that there was no reason to find that Wisconsin was in a position to assume jurisdiction. The court awarded custody of the child to her father. The aunt and uncle appealed the decision to the California Court of Appeals. That court affirmed the trial court's decision, finding that California had jurisdiction under the UCCJA.

The father filed a motion to dismiss the Rock County custody action based on California's award of custody to him. This time Judge Rude granted the motion to dismiss concluding that the California court, not the Wisconsin court, did indeed have jurisdiction over the custody of the child. Judge Rude denied the

189

aunt and uncle's motion for reconsideration but granted their motion to stay the order of dismissal pending appeal.

The aunt and uncle argue that collateral estoppel precludes relitigation of subject matter jurisdiction under sec. 822.03 because of Judge Lussow's June 17, 1986, jurisdiction decree in the guardianship action. They also argue that res judicata [3] precludes relitigation of subject matter jurisdiction because of Judge Rude's denial of the motion to dismiss the TPR action after adopting Judge Lussow's finding of jurisdiction in the guardianship case.

Subject matter jurisdiction questions deal with whether a court has the power or competence to decide the kind of controversy involved. These are questions of law that we decide without deference to the trial court. *Dragoo v. Dragoo,* 99 Wis. 2d 42, 43, 298 N.W.2d 231, 232 (Ct. App. 1980). Subject matter jurisdiction is conferred by the constitution and statutes that grant the courts power to hear various kinds of actions. *State ex rel. Prentice v. County Court,* 70 Wis. 2d 230, 237, 234 N.W.2d 283, 286 (1975). The statutes define and limit

---

[3]The difference between collateral estoppel and res judicata has been detailed in *Lawlor v. National Screen Serv. Corp.,* 349 U.S. 322, 326 (1955):

> [U]nder the doctrine of *res judicata,* a judgment "on the merits" in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, such a judgment precludes relitigation of issues actually litigated and determined in the prior suit, regardless of whether it was based on the same cause of action as the second suit.

Because both arguments involve the doctrine of collateral estoppel, we will treat them as such in this appeal.

the circuit court's jurisdiction concerning actions involving guardianship, TPR, and custody proceedings.

Subject matter jurisdiction cannot be waived or conferred by consent. *State ex rel. La Follette v. Raskin,* 30 Wis. 2d 39, 45, 139 N.W.2d 667, 670 (1966). Whenever want of jurisdiction appears at any stage of the case, it is the court's duty to dismiss the case from its consideration. However, the concept of subject matter jurisdiction must be applied in conjunction with, and in deference to, the well-established principle of collateral estoppel. *H.N.T. v. State,* 125 Wis. 2d 242, 252, 371 N.W.2d 395, 400 (Ct. App. 1985). The doctrine of collateral estoppel establishes that a party to a previous lawsuit may not relitigate an identical issue of fact or law that was actually adjudicated and necessarily decided in a suit in which there was a valid and final judgment.

The first question we consider is whether the UCCJA applies to guardianship and TPR proceedings. If it does not, the issue of jurisdiction under the UCCJA was not necessarily decided in those proceedings and collateral estoppel does not bar relitigation of that issue.

The UCCJA confers jurisdiction to make child custody determinations. Sec. 822.03, Stats. A custody determination is defined in part as "a court decision and court orders and instructions providing for the custody of a child, including visitation rights." Sec. 822.02(2), Stats. Section 822.02(3) states that a custody proceeding "includes proceedings in which a custody determination is one of several issues, such as an action for divorce or separation, and includes child neglect and dependency proceedings." The UCCJA does not explicitly include or exclude guardianship or TPR proceedings from its domain, nor does Wisconsin case law expressly address

191

this question. However, other states that have adopted the UCCJA have ruled affirmatively as to the applicability of the Act to guardianship and TPR proceedings.[4]

The Oklahoma Supreme Court found that a guardianship proceeding with respect to a minor must comply with the UCCJA. *Walling v. Walling,* 727 P.2d 586, 590 (Okla. 1986). The court, in part, relied on the UCCJA commissioner's note stating that a custody proceeding "is to be understood in a broad sense. The term covers habeas corpus actions, guardianship petitions, and other proceedings available under general state law to determine custody."[5] The Ohio Supreme Court found that the UCCJA applies to a guardianship termination proceeding involving minors. *Guardianship of Wonderly,* 423 N.E.2d 420 (Ohio 1981). It supported its decision by citing Ohio's guardianship statute, which indicates that a guardian shall have custody of the person and the estate of a minor. The court concluded that "the guardianship issue and the custody issues are inextricably intertwined, thus requiring compliance with the [UCCJA]." *Id.* at 424. Wisconsin's guardianship statutes similarly demonstrate that a guardian has custody of the person of a minor. [6]

---

[4]The UCCJA, as adopted in the states included in this discussion, contains a definition of "custody proceeding" similar to Wisconsin's definition.

[5]UCCJA, 9 U.L.A. sec. 2 at 120, *cited in Walling,* 727 P.2d at 589.

[6]Section 880.01(3), Stats., states:

"Guardian" means one appointed by a court to have care, custody and control of the person of a minor or an incompetent or the management of the estate of a minor, an incompetent or a spendthrift.

The relevant portion of sec. 48.023, Stats., states:

"A person appointed by the court to be the guardian of a child under

As for TPR proceedings, an Indiana appellate court found that even though a termination of parental rights is the ultimate determination of child custody as to that parent, jurisdiction for TPR cases does not fall under the UCCJA. *Johnson v. Capps,* 415 N.E.2d 108, 110 (Ind. Ct. App. 1981). The court reasoned that TPR is a "statutory mechanism which permits a child to be adopted without the consent of a parent," and as such, jurisdiction "is properly determined under the adoption statutes." *Id.* Many states, however, have found that adoption proceedings are custody proceedings within the meaning of the UCCJA.[7] The Georgia Supreme Court found that the language and purpose of the UCCJA are broad enough to encompass adoption proceedings. *Gainey v. Olivo,* 373 S.E.2d 4 (1988). In reaching this conclusion, the court relied in part on the fact that the drafter and reporter for the UCCJA wrote that the Act should be applied to adoption proceedings.[8] *Gainey* is relevant to the present case in that it was a proceeding to terminate the natural father's parental rights in addition to an adoption proceeding. The *Gainey* court noted that it has, in a context not involving the UCCJA, broadly defined the term "custody" to include TPR proceedings.[9]

this chapter has the duty and authority . . . including but not limited to:

. . ..

(4) The rights and responsibilities of legal custody except when legal custody has been vested in another person.

[7] *See E.E.B. v. D.A.,* 446 A.2d 871 (N.J. 1982); *Noga v. Noga,* 443 N.E.2d 1142 (Ill. App. 3d 1982); *Souza v. Superior Court,* 193 Cal. App. 3d 1304, 238 Cal. Rptr. 892 (1987).

[8] Bodenheimer & Neeley-Kvarme, *Jurisdiction Over Child Custody and Adoption After Shaffer and Kulko,* 12 U.C. Davis L. Rev. 229 (1979), *cited in Gainey,* 373 S.E.2d at 6.

[9] *Gainey,* 373 S.E.2d at 7 n. 6 (citing *Hancock v. Coley,* 368 S.E.2d 735 (Ga. 1988)).

An additional argument for including TPR proceedings in the UCCJA comes from an interpretation of the Act's language itself. Section 822.02(3) includes child neglect and dependency proceedings within the purview of "custody proceedings." In Wisconsin, these proceedings would most likely be brought as a CHIPS proceeding (child alleged to be in need of protection or services) under sec. 48.13, Stats.[10] In a CHIPS proceeding, if the court finds that a child is in need of protection or services, it decides on a placement and treatment for the child. In making this decision, it must follow "a policy of transferring custody from the parent only where there is no less drastic alternative." Sec. 48.355, Stats. If a CHIPS proceeding is a custody proceeding under the UCCJA, it follows that the more drastic TPR proceeding, whereby a parent is permanently stripped of the custody of a child, is a custody proceeding under the Act.

We conclude that guardianship and TPR proceedings are "custody" determinations within the meaning of sec. 822.02(3) and therefore are governed by the UCCJA. This conclusion is consistent with the reasons and purposes for adopting the Act. These include, among others, the avoidance of jurisdictional competition and conflict with other states resulting in the shifting of children

_____

[10]The relevant portion of sec. 48.13 provides:

The court has exclusive original jurisdiction over a child alleged to be in need of protection or services which can be ordered by the court, and:

. . ..

(2) Who has been abandoned;

. . ..

(10) Whose parent, guardian or legal custodian neglects, refuses or is unable for reasons other than poverty to provide necessary care, food, clothing, medical or dental care or shelter so as to seriously endanger the physical health of the child;

from state to state; the rendering of a custody decree in the state that can best decide the case; and the avoidance of relitigating the custody decisions of other states. *See* sec. 822.01, Stats. The UCCJA would lose much of its effectiveness if it did not cover all proceedings in which a "custody" determination could be made.

Next we decide whether the finding in the guardianship and TPR proceedings, that Wisconsin has jurisdiction under the UCCJA, collaterally estops relitigation of that issue. Because an exception to the basic principle of collateral estoppel applies to this case, we hold that the jurisdiction issue may be relitigated.

Restatement (Second) of Judgments, sec. 12 (1982), provides:

> When a court has rendered a judgment in a contested action, the judgment precludes the parties from litigating the question of the court's subject matter jurisdiction in subsequent litigation except if:
>
> (1) The subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority; or
>
> (2) Allowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government; or
>
> (3) The judgment was rendered by a court lacking capability to make an adequately informed determination of a question concerning its own jurisdiction and as a matter of procedural fairness the party seeking to avoid the judgment should have opportunity belatedly to attack the court's subject matter jurisdiction.

It is our determination that subject matter under the UCCJA was so plainly beyond the circuit court's

jurisdiction in both the guardianship and TPR proceedings that it was a manifest abuse of the circuit court's authority to entertain those actions. It is clear upon review, and should have been clear at the time of those proceedings, that California, not Wisconsin, had jurisdiction under the UCCJA to make custody determinations concerning A.E.H.

Under sec. 822.03(1), only one of the four criteria listed in subsecs. (a), (b), (c) and (d) must be met before a court can assume jurisdiction under the UCCJA. *See Colby v. Colby,* 102 Wis. 2d 198, 203–04, 306 N.W.2d 57, 60 (1981). It is not contested that California, rather than Wisconsin, was the child's "home state," as defined in sec. 822.03(1)(a), at the time of the guardianship proceedings. The child had lived in California within six months prior to the guardianship proceeding, and she was absent from California because she was removed by the aunt and uncle who now seek custody.

The Rock County court's decree of jurisdiction in the guardianship action was based on its determination that Wisconsin met the criteria in subsecs. (b), (c), and (d) of sec. 822.03(1). Subsection (b) requires that the child and at least one of the contestants have significant connections with the state. The court determined that the child and the aunt and uncle had significant connections with Wisconsin based on thirty-three findings of fact. However, almost all of these findings pertain to either the admittedly significant connections of the aunt and uncle with Wisconsin or to the contacts, or lack of contacts, between the child and her father. The only connection found between the child and Wisconsin is that she visited her relatives in Wisconsin nine times over the one-year period when she lived in Missouri with

her grandfather. One of these visits was a ten-day vacation at the aunt and uncle's farm. However, short-term presence in the state is not enough to establish a significant connection with the state. *Vorpahl v. Lee,* 99 Wis. 2d 7, 10–12, 298 N.W.2d 222, 224–25 (Ct. App. 1980).

■

The aunt and uncle commenced the guardianship proceedings on March 17, 1986, at which time the child had been in Wisconsin for less than three weeks. The court found that since the child has resided with her aunt and uncle, she has adjusted well, and she has been able to renew her acquaintance with her relatives in Wisconsin. Although these are connections between the child and Wisconsin, it was improper to consider these factors because the jurisdictional requirements under the UCCJA must be met at the time of the commencement of the proceeding. *Dragoo,* 99 Wis. 2d at 45, 298 N.W.2d at 232; *see also S.J. v. L.T.,* 727 P.2d 789, 792 (Ala. 1986) (subject matter jurisdiction either exists or does not exist at the time when the petition is filed with the court).

In contrast to the child's sparse connection with Wisconsin, her connection with California was more significant. She was born in California and lived there for most of her life. Also, her father lives in California.

The commissioner's notes state that the purpose of sec. 822.03(2)(b) is "to limit jurisdiction rather than to proliferate it."[11] The notes require, therefore, that "[t]here must be maximum rather than minimum contact with the state."[12] When comparing the child's connection with Wisconsin and with California, it is clear

---

[11] Commissioner's Notes to UCCJA sec. 3 [sec. 822.03, Stats], *reprinted in* 9 U.L.A. at 108 (West 1973), *cited in Vorpahl,* 99 Wis. 2d at 10 n. 3, 298 N.W.2d at 224 n. 3.

[12] *Id.*

that Wisconsin only had minimum connection while California had maximum connection.

■■■

Section 822.03(1)(c) requires that the child be physically present in the state and that the child has been abandoned or there is an emergency and the child needs protection. There are no facts that can sustain a finding of jurisdiction on this basis. The child had not been abandoned by her mother's death. There is no evidence that she was mistreated, abused or neglected. At all times after her mother's death, the child was well cared for. The Santa Clara County Juvenile Court placed her under protective custody and then released her to the physical custody of relatives. It was therefore inappropriate for Wisconsin to invoke jurisdiction under this subsection at the time of the guardianship proceedings.

■■■

Subsection (d) applies if one of two alternatives occur: (1) no other state would have jurisdiction under subsecs. (a), (b), or (c); or (2) another state has declined jurisdiction. The first alternative clearly does not apply to this case because it is undisputed that California has jurisdiction as the child's "home state." The court found that the second alternative applied because the Santa Clara County Juvenile Court declined jurisdiction by releasing the child to them in order to commence custody proceedings in Wisconsin. This finding, however, is clearly erroneous because before the court entered its decree of jurisdiction in the guardianship proceedings, it had a telephone conference with the California court, which informed it that California had invoked jurisdiction by the proceedings held on February 26, 1986, in the Santa Clara County Juvenile Court; that California never declined jurisdiction; and thus Wisconsin should discontinue its proceedings.

198

Because it is clear that none of the criteria in sec. 822.03(1) had been met, the trial court correctly concluded that collateral estoppel did not apply. Here, the subject matter of the guardianship and TPR proceedings were so plainly beyond the Wisconsin court's jurisdiction that its entertaining the actions was a manifest abuse of authority. Additionally, to allow the previous rulings on jurisdiction to stand under the doctrine of collateral estoppel would substantially infringe on the proper tribunal, the California court. Also, for the reasons previously discussed, the trial court correctly concluded that proper jurisdiction on the custody issue lies in California.

*By the Court.*—Order affirmed.