[No. H003092. Sixth Dist. July 29, 1987.]

JEFFREY ALLEN SOUZA, Petitioner, v.
THE SUPERIOR COURT OF SANTA CRUZ COUNTY,
Respondent;
KEITH BRISTOW, Real Party in Interest.

COUNSEL

Edwin A. Frey for Petitioner.

No appearance for Respondent.

Clarke M. Dixon-Moses for Real Party in Interest.

OPINION

BRAUER, J.—This case presents a conflict between lawsuits determining custody: the stepparent adoption brought by the mother and her husband in the Santa Cruz County Superior Court, and the action to establish visitation and custodial rights brought by the father in a Hawaiian court. The Hawaiian court was the first tribunal to make custody determinations regarding the child, the parties' five-year-old daughter Janel. The father has sought a writ of mandate to order the Santa Cruz Superior Court either to dismiss the stepparent adoption in deference to the primary jurisdiction of Hawaii, or alternatively to communicate with that tribunal in resolving the main issues here, which are (1) which tribunal should hear the matter; and (2) whether the father has abandoned the child, or whether instead she was concealed from him over the past four years. The latter question, whether there was abandonment, will determine both whether Hawaii has primary jurisdiction, and whether a stepparent adoption may go forward. We have concluded, for reasons we shall state, that the Santa Cruz court should have applied the Uniform Child Custody Jurisdiction Act (UCCJA, Civ. Code, § 5150 et seq.) and the Federal Parental Kidnapping Prevention Act (PKPA, 28 U.S.C. § 1738A) to this dispute. Accordingly the writ will issue.

THE RECORD

The facts, briefly stated, show that the father, Jeffrey Souza (Jeffrey), was married to the mother, Jessica Souza (Jessica), in Hawaii. She brought a divorce action there, granted March 5, 1982, while she was pregnant. The Hawaiian court reserved jurisdiction over child custody and visitation. The child was born after the decree, on June 15, 1982. The parties stipulated to child support and visitation for Jeffrey, and the court approved the stipulation February 17, 1983.

May 11, 1983, Jessica moved to California with the child. Jeffrey does not challenge her right to do so. The declarations of Jessica and Jeffrey part company here: He says she never told him her whereabouts so he could not contact the child or provide support; she says in conclusory fashion that "I have seen to it that respondent always knew how to communicate with me and with JANEL." It is agreed that Jeffrey has had no contact with his child since May 11, 1983.

Jessica married Keith Bristow in 1984. He filed a stepparent adoption petition November 26, 1986. At that time the child had been in California for more than three years and was over four years old.

After being served with the adoption petition, Jeffrey on March 4, 1987, moved the Hawaii family court for visitation with his daughter and related relief. He alleged that Jessica had moved to California in 1983 and since then he has been allowed no visitation nor informed of the child's whereabouts. The court issued an order to show cause on that date, March 4, returnable March 13, ordering Jessica to show cause why the custody order should not be modified as requested.

On March 24 Jeffrey's attorney wrote a letter to the judge in the Santa Cruz adoption proceeding informing him of the pending proceeding in Hawaii and requesting that action be stayed and communication begun with the Hawaiian court. He specifically pointed out the order to show cause in Hawaii ,was pending and had been continued to March 31.

The Hawaii court issued its order to show cause on April 13, 1987. We do not have a full record of the proceeding there; however the order discloses that Jessica appeared specially by her attorney to contest jurisdiction. The Hawaii court determined it had jurisdiction over Janel's custody based on the initial decree and Jeffrey's continued residence in Hawaii. The order recites that Hawaii was-the child's home state under the UCCJA, in effect in Hawaii when the original decree was made, and is still the residence of one of the contestants, Jeffrey. Accordingly the order grants Jeffrey visitation with Janel on stated terms, and also orders the probation office to conduct a social study which shall be carried out under the auspices of the Santa Cruz County court. Then a custodial hearing shall be held in Hawaii.

Jeffrey attempted to assert the continued activity of the Hawaiian court as a bar to further proceedings in Santa Cruz. Bristow responded by arguing the UCCJA has no application to adoption proceedings. The trial court refused to dismiss, saying the Hawaiian proceedings do not divest the Santa Cruz court of subject matter jurisdiction in the adoption. The trial court order does not recite any of the necessary findings under the UCCJA, specifically, Civil Code section 5163, to justify modifying the custody decree of another state.

## DISCUSSION

Civil Code section 5163 says: "(1) If a court of another state has made a custody decree, a court of this state *shall* not modify that decree unless (a) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this title or has declined to assume jurisdiction to modify the decree and (b) the court of this state has jurisdiction." (Italics added.)

The mandatory nature of the proscription against modification was emphasized in *Kumar* v. *Superior Court* (1982) 32 Cal.3d 689 [186 Cal.Rptr. 772, 652 P.2d 1003]. ▉ That case holds that all petitions for modification of child custody decrees *must* be addressed to the state of original rendition unless that state has lost jurisdiction under the act's standards. Normally, so long as one parent still lives in the original state, jurisdiction continues in that state. " '*Only when the child and all parties have moved away is deference to another state's continuing jurisdiction no longer required.* (Italics added; Bodenheimer, *Interstate Custody*: etc. (1981) 14 Fam.L.Q. 203, 214-215.)' " (As quoted in *Kumar, supra,* 32 Cal.3d at p. 696. See also *In re Marriage of Ratshin* (1983) 144 Cal.App.3d 974 [192 Cal.Rptr. 891]; *Peery* v. *Superior Court* (1985) 174 Cal.App.3d 1085 [219 Cal.Rptr. 882].)

Presumably jurisdiction in the original state could vanish with the passage of enough time. The general basis for jurisdiction under the UCCJA, absent conflict of court considerations, is presence of the child and significant connection with the forum state. (See Civ. Code, § 5156.) Section 5163 authorizes the second state to act where the original state no longer has jurisdiction "under jurisdictional prerequisites substantially in accordance with this title," i.e., where there has been sufficient attenuation of the child's contacts with the original forum state. Thus the code commissioners' note to section 14 of the UCCJA (model for § 5163) says that when the wife moves away with the children and the father remains in the original state but allows the wife to keep the children for several years without asserting his custody rights and without visitation, modification jurisdiction of state one would cease.

Standards under the PKPA parallel those found in the UCCJA. The PKPA similarly mandates full faith and credit to child custody determinations, and provides for continuing jurisdiction of the original state so long as the jurisdictional requirements of the statute continue to be met there and such state remains the residence of the child or any contestant.[1]

Here, if it is established that Jeffrey could have had access to Janel but did not do so for three years, that fact would both erode the original

---

[1] The PKPA (28 U.S.C.A. § 1738A (1980)), like Civil Code section 5163 quoted in the text, contains language mandating deference to the first rendered decree in a custody dispute, and also orders a court not to exercise its jurisdiction "in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination." (28 U.S.C.A. § 1738A. (g); see also subd. (a) (1980).) The California Supreme Court has held that the PKPA preempts state law on the issue of jurisdiction by a state to render a valid custody decree. (*People* v. *Superior Court (Smolin)* (1986) 41 Cal.3d 758, 770 [225 Cal.Rptr. 438, 716 P2d 991], revd. by the United States Supreme Court on different grounds, *California* v. *Superior Court (Smolin)* (1987) 482 U.S. 400 [96 L.Ed.2d 332, 107 S.Ct. 2433].) The United States Supreme Court decision in *Smolin* also held the PKPA creates a uniform federal rule governing custody determinations to which state courts must adhere. (*Id.* at p. __ [96 L.Ed.2d at p. 343].)

jurisdiction of the Hawaii family court and also provide the basis for the finding of abandonment needed to establish Bristow's right to adopt. But, that very fact is in issue in two currently proceeding actions, the adoption in Santa Cruz and the family court action in Hawaii. ▉ Accordingly the first determination to be made is which forum should most appropriately decide the abandonment issue.

In this regard, by finding it had jurisdiction to proceed under the UCCJA, the Hawaii court necessarily made at least a preliminary determination of its primary jurisdiction in this matter. Jessica was served and had notice of that proceeding; she chose to appear only specially and we do not know what defenses she raised. But she has not, so far as we know, proceeded to challenge the Hawaii court's assumption of jurisdiction; instead she has proceeded with the conflicting action in Santa Cruz. Her course of action, coupled with the failure of the Santa Cruz court to cooperate with the Hawaii court in resolving these problems, has resulted in precisely the collision of tribunals and potential for inconsistent findings which both the UCCJA and the PKPA aim to prevent.[2]

▉ Bristow argued in the Santa Cruz court that the UCCJA standards do not apply in an adoption proceeding. This argument is clearly wrong. The UCCJA regulates custody of children. An adoption proceeding to terminate parental custody rights is clearly a custody-determining proceeding of the most drastic kind. California decisions have been unequivocal in importing into *all* custody-determining procedures the same requirements and standards. (See *In re B.G.* (1974) 11 Cal.3d 679, 696 [114 Cal.Rptr. 444, 523 P.2d 244] ["California has at least eight separate proceedings in which custody questions can be litigated."]; *Guardianship of Donaldson* (1986) 178 Cal.App.3d 477, 487-488 [223 Cal.Rptr. 707] [applying UCCJA to a guardianship proceeding]; *In re David C.* (1984) 152 Cal.App.3d 1189, 1203, fn. 4 [200 Cal.Rptr. 115].) *Guardianship of Donaldson* held that the UCCJA applies to guardianship proceedings which affect the custody of children; and when such disputes involve potential collisions of tribunals, the UCCJA principles properly govern resolution of such disputes. That case, quoting a California Supreme Court decision, points out " 'Custody embraces the sum of parental rights with respect to the rearing of a child, including its care.' " (*Guardianship of Donaldson, supra,* at p. 486, quoting from *Burge* v. *City & County of San Francisco* (1953) 41 Cal.2d 608, 617 [262 P.2d 6].) Patently, a stepparent adoption, with its potential for completely terminating the natu-

---

[2] We do not assume that the Hawaiian court will necessarily decide to go forward even if the stepparent adoption is stayed. Under the UCCJA the Hawaiian court could presumably elect not to exercise jurisdiction, because of the child's presence in California for four years; but it could also focus on other factors, particularly if only the father's right to visitation were in issue, in which case evidence relating to his circumstances would be most important.

ral father's custodial rights, is a custody-determining procedure and is equally subject to the UCCJA and the PKPA.

What was said in *Donaldson,* regarding the appropriate application of the UCCJA to guardianships, is equally applicable here: "The children here, subjects of conflicting decrees rendered by California and [Hawaii], are vulnerable to the very abuses the Act seeks to cure." (*Guardianship of Donaldson, supra,* 178 Cal.App.3d at p. 488.) *Kumar* points out the act's purposes—preventing jurisdictional competition, promoting interstate cooperation, litigating child custody disputes in the most suitable forum, discouraging continuing conflict over custody, deterring abductions, avoiding relitigation of another state's custody decisions, and promoting interstate exchange of information and cooperation. (*Kumar* v. *Superior Court, supra,* 32 Cal.3d at p. 695; see also *Guardianship of Donaldson, supra,* at p. 488.) These purposes are equally relevant and important in a stepparent adoption under the circumstances presented here.

What is more, as also noted in *Donaldson,* the UCCJA imposes a mandatory duty on a custody-determining court, once it learns of a conflicting proceeding, to communicate with the sister state forum to the end that a well-reasoned decision may result as to the most suitable forum to try the matter. (See Civ. Code, § 5155, subd. (3); *Guardianship of Donaldson, supra,* 178 Cal.App.3d at p. 491; *In re Marriage of Hopson* (1980) 110 Cal.App.3d 884, 900 [168 Cal.Rptr. 345].) This mandate furthers the child's best interests by bringing the maximum available data to bear on the custodial decision.

The Hawaii court here, by electing to take jurisdiction, has already determined that it has jurisdiction under the UCCJA to try this matter. That determination necessarily implies that Jeffrey has not abandoned his child. To proceed with the adoption in the Santa Cruz court conflicts with this determination.

Jessica argues the Hawaii court erroneously determined that it had jurisdiction. She relies on *In re Marriage of Fox* (1986) 180 Cal.App.3d 862 [225 Cal.Rptr. 823], for the proposition the California court may determine that issue anew. We disagree with her interpretation of *Fox,* which does not hold this state is free to redetermine issues already determined in another jurisdiction. Such a holding would be inconsistent with the full faith and credit clause and with its application to custody matters by the PKPA. *Fox* does say where a parent petitions for custody but an out-of-state decree vests custody in the other parent, a court of this state must first determine whether the existing decree is enforceable under UCCJA section 5162. (180 Cal.App.3d at p. 870.) If it is enforceable, *Fox* goes on to say, then it may not be modified unless the foreign court no longer has subject matter juris-

diction. (Citing *Kumar, supra,* 32 Cal.3d 689 and *Peery* v. *Superior Court, supra,* 174 Cal.App.3d 1085.) *Fox* then engaged in a substantial evidence analysis to determine if the out-of-state decree (there Louisiana) was enforceable, and determined that it was not because at the time of rendition there was no UCCJA basis for the decree, not even home state. Accordingly the California court was free to determine if it had jurisdiction under the UCCJA.

Here, however, the Hawaii court had original subject matter jurisdiction; no one questions the validity of the initial decree. The question is whether that jurisdiction was lost by virtue of abandonment. Clearly Hawaii, the court of original rendition, has prima facie subject matter jurisdiction to modify its decree. Included in that power is the power to determine whether it still has jurisdiction, i.e., to find the necessary underlying facts. It has done so, in a noticed proceeding. To the extent *Fox* suggests the California court has the power to engage in a substantial evidence review of the Hawaii court's determination of its own jurisdiction, we must disagree. The only orderly procedure avoiding a conflict of state rulings is to require Jessica to challenge the Hawaii court's assumption of jurisdiction by direct attack in that proceeding. If she does not do so, it becomes a final ruling and is entitled to full faith and credit like any other state court judgment.

*Peery* v. *Superior Court, supra,* 174 Cal.App.3d 1085, discusses the question when collateral attack is proper on a sister state judgment. There, California was the original state to act and Louisiana assumed modification jurisdiction in derogation of the California decree. ■ *Peery* points out the general rule is that such collateral attack may not be made where the party to be bound had notice and opportunity to make a direct attack on the jurisdictional basis of the original decree. "[N]ormal principles of res judicata apply to the determination of subject matter jurisdiction . . . ." (See *Peery, supra,* at p. 1094, citing 2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction, § 280, pp. 686-687.) ■ So here, both the initial and the modifying decrees of the Hawaii court, being regular on their face are not subject to collateral attack in a California forum. And by virtue of the PKPA, they are binding on the Santa Cruz Superior Court.

### DISPOSITION

Real party in interest has been notified that a peremptory writ in the first instance could be issued here, and he has filed opposition. The peremptory writ of mandate will issue in the first instance. (Code Civ. Proc., § 1088; *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-182 [203 Cal.Rptr. 626, 681 P.2d 893].)

Let a peremptory writ of mandate issue, directing the Santa Cruz County Superior Court to take no further action in the adoption proceeding now

before it, numbered AD 0039, other than to either (1) stay the action pending resolution of the custody proceeding now pending in Hawaii and cooperate with the Hawaii court in connection with that proceeding or (2) dismiss the adoption proceeding entirely. The trial court shall exercise its discretion as to which alternative is more suitable. Our temporary stay filed on May 13, 1987, of all proceedings in the adoption action shall remain in effect until this order becomes final.

Agliano, P. J., and Capaccioli, J., concurred.