## 45310, 45311. GAINEY v. OLIVO; and vice versa.
### (373 SE2d 4)

BELL, Justice.

We granted certiorari to consider two questions concerning the decision of the Court of Appeals in this case. *Olivo v. Gainey,* 185 Ga. App. 427 (364 SE2d 279) (1987). The first question, which stems from Division 1, is whether the Uniform Child Custody Jurisdiction Act[1]

---

[1] OCGA § 19-9-40 to § 19-9-64.

(hereinafter the UCCJA), before its amendment in 1988,[2] applies to adoption proceedings. *Olivo v. Gainey*, supra, 185 Ga. App. at 427-428 (1). If we answer this first question in the negative, then we must address a question arising from Division 3 of the Court of Appeals decision, which is whether the Court of Appeals was authorized to reverse the trial court's termination of Olivo's parental rights. Id. at 428-429 (3). See *In re Baby Girl Eason*, 257 Ga. 292 (358 SE2d 459) (1987). As we conclude that the UCCJA does apply to adoption proceedings, we find it unnecessary to reach the second question.

On December 22, 1985, the child who is the subject of this litigation was born in Rochester, New York, where the child's mother, Stephanie Flagg, and natural father, Manuel Olivo, lived. From the beginning of her pregnancy Flagg planned to place the child for adoption with a private adoption agency located in New York. In September 1985, that agency contacted Olivo, inquiring whether he would surrender his parental rights and consent to the child's adoption. Olivo stated he would not. Shortly after the child's birth, Flagg placed the child with the adoption agency. Although Olivo did not contact or support Flagg during her pregnancy,[3] he did, on March 26, 1986, file custody and paternity proceedings in New York. However, on March 27, 1986, the adoption agency, with Flagg's permission, transferred the child to a Mr. Wayne Ohl, a New York attorney. Ohl then brought the child to Georgia[4], and placed it with William and Gale Gainey, a Georgia couple who wish to adopt the child.

The Gaineys hoped that the adoption could be effectuated in New York, but on August 4, 1986, after the New York court had ordered Ohl to reveal the location of the child, they commenced this action in Georgia (in the Thomas County Superior Court) to terminate Olivo's parental rights and to adopt the child. Olivo contested the petition, asserting his claim for custody of the child and raising the issue of the pending custody action in New York.

On September 18, 1986, the New York court issued an order of filiation, declaring Olivo the father of the child, and on January 28, 1987, issued an order reserving jurisdiction

---

[2] See Ga. Laws 1988, 1408, 1409, § 1. That law amended § 19-9-42 (3), to add adoption proceedings to the list of matters included within the term "custody proceeding."

[3] The reason Olivo did not contact or support Flagg is disputed by the parties. However, as such evidence relates to the issue whether Olivo abandoned his opportunity interest in the child, and as we find it unnecessary to address this issue, the evidence on this issue will not be set forth in this opinion.

[4] The exact date Ohl took this action is uncertain, although it appears he took the action sometime in April 1986.

over the issue of custody of the child and forbidding adoption of the child in Georgia until the New York custody proceeding was determined. Certified copies of both orders were promptly forwarded to the Georgia court. Nevertheless, following a hearing on February 5, 1987, the Georgia court terminated Olivo's parental rights and approved the adoption.

*Olivo v. Gainey*, supra, 185 Ga. App. at 427.

Olivo appealed to the Court of Appeals, contending that under the UCCJA the trial court erred in not staying the Georgia adoption proceedings, and that the trial court erred in finding that Olivo had abandoned the child and in granting the adoption. The Court of Appeals ruled that the UCCJA did not apply to adoption proceedings, but that the trial court erred in ruling that Olivo had abandoned the child.

The Gaineys applied for certiorari from the reversal of the adoption, contending that the Court of Appeals erred in overturning the trial court's finding of abandonment. Olivo responded with a cross-application for certiorari, arguing that the Court of Appeals erred in concluding that the UCCJA did not apply to adoption proceedings. We granted both applications for certiorari. As previously noted, we conclude that the UCCJA does apply to adoption proceedings, therefore rendering unnecessary a decision on whether the Court of Appeals was authorized to reverse the termination of parental rights.

1. Olivo contends that under OCGA § 19-9-46 (a), a provision of the UCCJA as adopted in Georgia, the trial court erred in not staying the Gaineys' adoption petition pending disposition of his previously filed New York custody proceeding. OCGA § 19-9-46 (a) provides as follows:

A court of this state shall not exercise its jurisdiction under this article if at the time of filing the petition a *proceeding concerning the custody of the child* was pending in a court of another state exercising jurisdiction substantially in conformity with this article, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons. [Emphasis supplied.]

The Court of Appeals correctly noted that Olivo's contention assumes the applicability of the UCCJA to adoption proceedings. *Olivo v. Gainey*, supra, 185 Ga. App. at 428. Whether the UCCJA applies to adoption proceedings depends upon whether an adoption proceeding is a custody proceeding within the meaning of the UCCJA. Before its amendment in 1988, § 19-9-42 (3) of the UCCJA defined the term "custody proceeding" to include "proceedings in which a custody de-

termination is one of several issues, such as an action for divorce or separation, and includes child neglect and dependency proceedings." Ga. Laws 1978, pp. 258, 260-261, § 1. Further, the UCCJA defines custody determination as "a court decision and court orders and instructions providing for the custody of a child, including, but not limited to visitation rights." OCGA § 19-9-42 (2).

In determining whether the UCCJA applies to adoption proceedings the Court of Appeals noted that other jurisdictions are split on the issue. *Olivo v. Gainey*, supra, 185 Ga. App. at 428.[5] However, the court held that after considering "the language and purpose of the UCCJA, we are persuaded that the UCCJA simply does not apply to adoption proceedings . . . ." Id. at 428.

We conclude to the contrary, finding that the language and purpose of the UCCJA are broad enough to encompass adoption proceedings. The comments to the UCCJA provide that the phrase " 'custody proceeding' is to be understood in a broad sense," Uniform Child Custody Jurisdiction Act (ULA), § 2, Comment, and Professor Bodenheimer, the drafter and reporter for the UCCJA, has written that the UCCJA should be applied to adoption proceedings, Bodenheimer & Neeley-Kvarme, *Jurisdiction Over Child Custody and Adoption After Shaffer and Kulko*, 12 U. C. Davis L. Rev. 229 (1979); accord McGough and Hughes, *Charted Territory: The Louisiana Experience with the Uniform Child Custody Jurisdiction Act*, 44 La. L. Rev. 19, 27 (1983).

Viewing the phrase "custody proceeding" in a "broad sense," as the comment to § 2 of the UCCJA suggests, we readily conclude that adoptions are encompassed therein. As we have previously noted in this opinion, the UCCJA defines a custody proceeding as a proceeding in which a custody determination is one of several issues, and a custody determination as a court order or decision providing for the custody of a child. We agree with the following analysis from *Souza v. Superior Court*, 193 Cal. App. 3d 1304, 1309-1310 (238 Cal. Rptr. 892) (Cal. Ct. App. 1987):

"Custody embraces the sum of parental rights with respect to the rearing of a child, including its care." [Cites. omitted.] Patently, a stepparent adoption, with its potential for completely terminating the natural father's custodial rights, is a

---

[5] See *E. E. B. v. D. A.*, 89 NJ 595 (446 A2d 871 (3)) (NJ 1982); *Noga v. Noga*, 111 Ill.App.3d 328 (443 NE2d 1142 (4)) (Ill. App. Ct. 1982); *Souza v. Superior Court*, 193 Cal.App.3d 1304, 1309-1310 (238 Cal.Rptr. 892) (Cal. Ct. App. 1987), for cases holding that the UCCJA applies to adoption proceedings, and *In re Johnson*, 415 NE2d 108 (2) (Ind. App. 1981), and *Williams v. Knott*, 690 SW2d 605 (2-4) (Tex. App. 1985), for cases holding to the contrary. The UCCJA, as adopted in all these states, contains a definition of "custody proceeding" similar to the one applicable to this case.

custody-determining procedure . . . .

Accord *E. E. B. v. D. A.*, supra, 446 A2d at 878.

That the language of the UCCJA should be construed to include adoptions is reinforced when the purposes of the UCCJA are considered.

As noted by the *Souza* court:

> the Act's purposes — preventing jurisdictional competition, promoting interstate cooperation, litigating child custody disputes in the most suitable forum, discouraging continuing conflict over custody, deterring abductions, avoiding relitigation of another state's custody decisions, and promoting interstate exchange of information and cooperation. . . . are . . . relevant and important in a stepparent adoption . . . .

*Souza*, supra, 193 Cal. App. 3d at 1310. The application of the UCCJA to this adoption proceeding would have, among other things, prevented jurisdictional competition, promoted interstate cooperation, and, most importantly, prevented the continued disruption of a child's life.

Considering the purposes and language of the UCCJA, we conclude that the Act applies to adoption proceedings.[6] Moreover, we conclude that the Georgia court should have deferred to the New York court under OCGA § 19-9-46 (a), because the New York court was "exercising jurisdiction substantially in conformity with this article," id.

2. In Case No. 45311, we therefore reverse the holding of the Court of Appeals in Division 1 of its opinion. We do not, however, reverse the judgment of the Court of Appeals, as the Court of Appeals reversed the trial court on another ground. In Case No. 45310, we vacate the grant of certiorari, on the ground that we do not need to decide the issue that we granted certiorari to review.

*Case No. 45310. Writ of certiorari vacated. All the Justices concur, except Smith, J., who dissents. Weltner, J., disqualified.*

*Case No. 45311. Judgment affirmed on other grounds. All the Justices concur, except Smith, J., who dissents. Weltner, J., disqualified.*

---

[6] We note that this court, in a different context, has broadly defined the term custody to include termination of parental rights proceedings. Our reason for doing so was "to protect the welfare of children caught up in litigation before the court." *Hancock v. Coley*, 258 Ga. 291, 293 (368 SE2d 735) (1988). The *Hancock* decision is thus consistent with the result we reach today, as adoption proceedings, like other custody proceedings, "determine the entire future course of a child's life" and are concerned primarily with "the interests of the child." Bodenheimer, supra at 233.

DECIDED OCTOBER 20, 1988 — RECONSIDERATION DENIED NOVEMBER 9, 1988.

*Alexander & Vann, William C. Sanders,* for appellant.
*Phyllis J. Holmen,* for appellee.
*Richard A. Horder,* amicus curiae.