[No. B057270. Second Dist., Div. Six. May 19, 1992.]

Adoption of ZACHARIAH K., A Minor.
MICHELLE S., Plaintiff and Respondent, v.
CRAIG M. et al., Defendants and Appellants.

**COUNSEL**

Jane A. Gorman for Defendants and Appellants.

No appearance for Plaintiff and Respondent.

**OPINION**

**STONE (S. J.), P. J.**—Subject matter jurisdiction for a proceeding to withdraw consent to adoption by a birth mother, pursuant to former Civil Code section 226a, is governed by the Uniform Child Custody Jurisdiction Act and the federal Parental Kidnapping Prevention Act. The trial court erred in exercising jurisdiction or, at the very least, in having failed to stay proceedings to communicate with the court in Oregon to ascertain whether Oregon declined to exercise jurisdiction. We reverse the order granting withdrawal of consent, dismissing the petition for adoption, and restoring custody of the child to the natural mother.

### FACTS

October 7, 1990, Michelle S. gave birth to a baby boy in Ventura, California. Immediately after his birth, Michelle placed him with appellants Craig M. and Georgene M., an Oregon couple, through arrangements made by Michelle's pastor. After consulting with an attorney, Michelle signed consent to adoption, release and surrender of parental rights, and authorization for appellants to become the child's guardians pending entry of an adoption decree, all on forms to be filed in the Oregon Circuit Court.

Michelle also signed an Interstate Compact on Placement of Children (ICPC) request (Civ. Code, § 265 et seq.) for supervisory services in Oregon.[1] The request was signed by the California compact administrator October 14, 1990, as the sending state, and by the Oregon compact administrator for the receiving state several days later. Appellants returned to

---

[1] All statutory references hereinafter are to the Civil Code unless otherwise specified.

Oregon with the child and obtained an order appointing them as guardians of the child on December 4, 1990. They also filed a petition for adoption in the Oregon Circuit Court for Multnomah County.

January 3, 1991, Michelle filed a petition to withdraw consent to adoption, pursuant to former section 226a.[2] The petition alleged that: (1) she had been counseled during her pregnancy by the youth pastor of her church, Karl Mason, to place her baby for adoption and that he contacted appellants in Oregon; (2) appellants took the baby less than 27 hours after birth; (3) she was pressured by Pastor Mason to consent to the adoption and told that she was jeopardizing his friendship with appellants if she did not do so; (4) she notified her attorney within 3 days that she wanted to have her baby back; (5) she never had objective counsel from someone not close to the prospective adoptive parents; (6) the natural father never consented to the adoption; and (7) she and the natural father plan to work together to provide a good home for the child if the court grants her request to withdraw her consent. She requested immediate custody of the child.

Appellants obtained a California attorney who specially appeared in opposition to California jurisdiction based on the pending adoption in the Oregon court and a valid Oregon order awarding them custody of the child. Appellants further alleged that the natural mother had signed all the appropriate documents for an adoption under the laws of Oregon and, since no California adoption or consent to adoption is pending before the California court, there is no consent to withdraw. They further argued that Oregon is the appropriate forum for litigation of the issues of the custody of the minor under the provisions of both the Uniform Child Custody Jurisdiction Act (UCCJA) and the federal Parental Kidnapping Prevention Act (PKPA).

The court initially ordered the hearing continued to January 24, 1991, with an order that "Counsel for adopting parents is to find the [Oregon] Judge's name and phone number for next week's hearing, and if he will be available for a phone conversation." Appellants filed a request for telephonic conference, under section 5155, paragraph (3), requesting that the California trial court confer with the Oregon court on January 28, 1991, to determine the appropriate forum for litigation of the petition to withdraw consent to the adoption of Zachariah K.

On the day set for hearing, Michelle's counsel filed a brief in support of California jurisdiction, claiming that this matter was not a custody proceeding and thus was not subject to the provisions of the UCCJA, and that the provisions of the ICPC conferred absolute jurisdiction on California "to the exclusion of the UCCJA."

---

[2] Provision for withdrawal of consent of the birth parent is now located in section 224.64.

The trial court agreed with appellants that the Oregon guardianship was "an order effecting [*sic*] custody;" that under the UCCJA Oregon had the power and the jurisdiction to render the order; that "under the UCCJA rules California should not exercise [jurisdiction] unless Oregon concedes it"; that "withdrawal of a consent is not a custody issue"; and that the consent given by Michelle was "clearly a California consent." However, the court refused to confer with the Oregon court because "the UCCJA issues do not apply." The court then set the hearing for February 8, 1991, and ordered the state Department of Social Services to prepare the necessary report.

Appellants filed a writ of mandate with this Court of Appeal February 5, 1991, based on the court's jurisdictional findings and requested a stay of proceedings pending the completion of the Oregon adoption. We denied the writ petition. February 8, 1991, the Multnomah County, Oregon Circuit Court granted appellants' petition for adoption. A certified copy of that decree was lodged with the California court on February 15, 1991.

March 5, 1991, the California Department of Social Services filed a supplemental report stating that it "is presenting this report under protest. It is our belief that we should not be involved in a case that is clearly an Oregon adoption matter." The report nevertheless recommended that the court find that the consent was not taken in accordance with California law, that undue influence was exerted over the natural mother, and that the minor was removed from California prior to ICPC approval. No discussion or recommendations were made concerning the child's best interests. The officer who prepared the report also indicated that one of the reasons the investigation usually carried out under California procedures for independent adoptions was not undertaken was because the ICPC agency closed its file when appellants obtained the Oregon guardianship order.

At the March 5, 1991, hearing, counsel for the state Department of Social Services noted that appellants claimed, contrary to Michelle's allegation, that they did not leave California prior to ICPC approval. Appellants' counsel argued that Michelle had no standing to bring the petition to withdraw consent to adoption because her legal relationship with the child under sections 228 and 229 ended when the Oregon adoption was granted, and that order rendered this proceeding moot. Furthermore, the order of adoption was properly lodged with the California Court pursuant to section 5164 and the California court had no power to modify it, under section 5163. Again, appellants' attorney argued that the case comes within the purview of the UCCJA since Michelle's petition on its face seeks custody of the child.

The court reiterated its earlier finding that the case did not fall within the UCCJA and that even if it did, California at least had "current jurisdiction

and could exercise it." The court stated that it had not been advised that the Oregon proceeding was "coming close to termination" and that California law must be applied to determine the validity of the consent. The court allowed Michelle to withdraw her consent to adoption, ruled that the Oregon adoption petition be dismissed, and ordered custody of the child restored to Michelle.

### DISCUSSION

1.  *Petition to Withdraw Consent to Adoption by Birth Parent Governed by the UCCJA and the PKPA.*

Former section 226a provides that "Once given, consent of the natural parents to the adoption of the child by the person or persons to whose adoption of the child the consent was given, may not be withdrawn except with court approval. Request for such approval may be made by motion, or a natural parent seeking to withdraw such consent may file with the clerk of the superior court where the petition is pending, a petition for approval of withdrawal thereof, without the necessity of payment of any fee for the filing of such petition. . . . [¶] The State Department of Social Services or the licensed county adoption agency shall, prior to the hearing of the motion or petition for withdrawal, file a full report with the court and shall appear at the hearing to represent the interests of the child. [¶] . . . If the court finds that withdrawal of the consent to adoption is reasonable in view of all the circumstances, and that withdrawal of the consent will be for the best interests of the child, the court shall approve the withdrawal of the consent; otherwise the court shall withhold its approval." Consideration of the best interests of the child is to include an assessment of the child's age, the extent of bonding with the prospective adoptive parents as well as with the natural or birth parent or the potential therefor, and the ability of the natural or birth parent to provide adequate and proper care and guidance to the child. (*Ibid.*) If the court approves the withdrawal of consent, the adoption proceedings are to be dismissed. (*Ibid.*) (Present § 224.64 maintains these stated requirements with only minor changes, such as substitution of the term "birth parent" for "natural parent.")

The stated purposes of the UCCJA are to avoid jurisdictional competition and conflict, promote interstate cooperation, litigate custody where child and family have closest connections, discourage continuing conflict over custody, deter abductions and unilateral removals of children, avoid relitigation of another state's custody decisions, and promote exchange of information and other mutual assistance between courts of sister states. (*Kumar* v. *Superior Court* (1982) 32 Cal.3d 689, 695; § 5150 [186 Cal.Rptr. 772, 652 P.2d 1003].)

The UCCJA commands that courts of this state shall recognize and enforce an initial or modification decree of a court of another state that has assumed jurisdiction under the terms of the act. (*Kumar, supra,* 32 Cal.3d at p. 695; § 5162.) ■ Section 5163 governs the authority of California to modify an out-of-state decree by providing that, if a court of another state has made a custody decree, a California court shall not modify that decree unless it appears that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this title or has declined to assume jurisdiction to modify the decree and the court of this state has jurisdiction. (*Kumar, supra,* at pp. 695-696.) Only when the child and all parties have moved away is deference to another state's continuing jurisdiction no longer required. (*Id.,* at p. 696.)

■ Michelle argued to the court that the instant matter was not a custody proceeding based upon language in *Adoption of Jennie L.* (1980) 111 Cal.App.3d 422, 429 [168 Cal.Rptr. 695]. There, the appellate court held that a court errs in applying the parental preference rules of section 4600 applicable to custody determinations following the parents' separation or dissolution of marriage to a proceeding on a petition to withdraw consent under section 226a. The court stated that, "Although the determination made in the section 226a proceeding will affect the ultimate issue of custody, it is not a proceeding to deprive a parent of custody. More significantly, section 4600 recognizes a parental preference in cases where the court is asked to award custody to persons other than a parent. Thus, before a parent may be involuntarily deprived of custody, the court must find that parental custody would be detrimental to the child. [Citation.] [¶] On the other hand, section 226a specifically provides that where a parent has signed a consent to the adoption of a child by others, the parent may not withdraw such consent unless the court finds that withdrawal is reasonable and in the best interest of the child. . . . [¶] Thus, by consenting to the adoption of a child by others, the consenting parent gives up the parental preference otherwise applicable under section 4600. . . ." The court's statement that a 226a proceeding is not one to deprive a parent of custody is based on the fact that legal custody normally remains with the natural parent until the adoption petition is granted. (111 Cal.App.3d at p. 429, fn. 4; see *Guardianship of Baby Boy M.* (1977) 66 Cal.App.3d 254, 271 [135 Cal.Rptr. 866].)

Nonetheless, simply because a proceeding under section 226a is not a custody proceeding under section 4600 does not mean that it is not a proceeding affecting custody. Where the birth parent has formally consented to adoption and legal guardianship in the preadoptive parents' pending adoption and where, as here, the preadoptive parents obtain a court appointment of guardianship, a petition to withdraw consent to adoption will have

the effect of potentially depriving custody of one with at least a colorable claim to custody of the minor child. (Cf. *In re Timothy W.* (1990) 223 Cal.App.3d 437, 445 [272 Cal.Rptr. 906] where current statutory procedures prior to a birth mother's formal consent to an adoption give the prospective adoptive parents only the right to temporary physical custody of the child and no status as "a person acting as a parent.")

The PKPA, drafted after the UCCJA, is directed to the same child custody problems, and provisions of both statutes are nearly identical. (*Matter of B.B.R.* (D.C.App. 1989) 566 A.2d 1032, 1036, fn. 10.) The UCCJA has been held to apply to guardianships (*Guardianship of Donaldson* (1986) 178 Cal.App.3d 477, 488 [223 Cal.Rptr. 707]) and to adoption proceedings. (*Souza* v. *Superior Court* (1987) 193 Cal.App.3d 1304, 1309-1310 [238 Cal.Rptr. 892]; *Gainey* v. *Olivo* (1988) 258 Ga. 640 [373 S.E.2d 4, 6]; *Matter of Adoption of K.C.P.* (Fla.Dist.Ct.App. 1983) 432 So.2d 620, 621-622.) "The comments to the UCCJA provide that the phrase ' "custody proceeding" is to be understood in a broad sense,' [] and that Professor Bodenheimer, the drafter and reporter for the UCCJA, has written that the UCCJA should be applied to adoption proceedings, . . ." (*Gainey* v. *Olivo, supra,* 373 S.E.2d 4, 6.) "Patently, [an independent] adoption, with its potential for completely terminating the natural [mother's] custodial rights, is a custody-determining procedure. . . ." (*Souza* v. *Superior Court, supra,* 193 Cal.App.3d 1304, 1309-1310.) Similarly, the PKPA has been held to apply to adoption proceedings. (*Rogers* v. *Platt* (1988) 199 Cal.App.3d 1204, 1212-1215 [245 Cal.Rptr. 532]; *Matter of B.B.R., supra,* 566 A.2d 1032, 1034.)

If the UCCJA and PKPA are not applicable to proceedings to determine whether or not consent to adoption should be withdrawn, "the abuses which the [acts] seek[] to prevent are perpetuated, and [their] salutory [*sic*] purposes not realized." (*Guardianship of Donaldson, supra,* 178 Cal.App.3d 477, 489.) The result will be as here—two conflicting orders by different states concerning the child's custody. Consequently, we hold that a proceeding to determine withdrawal of consent to adoption by a birth parent is governed by the UCCJA and the PKPA.

2. *Trial Court Failed to Defer to Other State Exercising Jurisdiction.*

█ The exclusive method of determining subject matter jurisdiction in custody cases in California is the UCCJA and a reviewing court is not bound by the trial court's findings and may independently reweigh the jurisdictional facts. (*In re Marriage of Arnold & Cully* (1990) 222 Cal.App.3d 499, 502 [271 Cal.Rptr. 624]; see also *People* v. *Beach* (1987) 194 Cal.App.3d 955, 963 [240 Cal.Rptr. 50]; *Plas* v. *Superior Court* (1984) 155 Cal.App.3d 1008,

1013 [202 Cal.Rptr. 490].) Subject matter jurisdiction either exists or does not exist at the time the action is commenced. (*Plas* v. *Superior Court, supra,* 155 Cal.App.3d 1008, 1015, fn. 5.)

Initial jurisdiction is determined under section 5152, which points to the state with the closest connections to the child and to information about his or her present and future well-being. (*Kumar* v. *Superior Court, supra,* 32 Cal.3d 689, 699.) Modification jurisdiction is essentially an extension of the recognition and enforcement provisions under section 5162. (*Kumar, supra,* at p. 699.) Under section 5153, a strong presumption arises that the decree state will continue to have modification jurisdiction until it loses all or almost all connection with the child. (*Kumar, supra,* at p. 699.) There is no provision in the UCCJA for jurisdiction by reason of presence of the parties or by stipulation or consent. (*Plas* v. *Superior Court, supra,* 155 Cal.App.3d 1008, 1013-1014.)

Like the UCCJA, the PKPA limits the exercise of jurisdiction to modify a sister state decree. (*Kumar, supra,* 32 Cal.3d at p. 699.) Federal law provides: "A court of a State may modify a determination of the custody of the same child made by a court of another State, if—(1) it has jurisdiction to make such a child custody determination; and (2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination." (28 U.S.C. § 1738A(f)(1), (2).)

Although both the UCCJA and PKPA attack the same problems and have similar (and in some cases almost identical) provisions, there are significant differences, especially regarding jurisdiction to modify custody awards. (Foster, *Child Custody Jurisdiction: UCCJA and PKPA* (1981) 27 N.Y.L. Sch. L. Rev. 297.) Under the UCCJA, there is greater flexibility for purposes of enforcement and modification of custody awards whereas the PKPA "imposes an obligatory full faith and credit mandate restricting modification, . . ." (*Id.,* at p. 301.) Where the UCCJA admits the possibility of concurrent or overlapping jurisdiction to be resolved by its provisions concerning "simultaneous proceedings," "forum non conveniens," the clean hands doctrine, and good faith communication between the courts of different states, the PKPA concentrates on mandatory enforcement and the nonmodifiability of decrees meeting its standards. (*Id.,* at pp. 301-303.)

The instant matter exemplifies the distinction between the UCCJA and the PKPA. Under the PKPA, "[a] court of a State shall not exercise jurisdiction in any proceeding for custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination." (28 U.S.C. § 1738A(g).)

■ The PKPA preempts state law on the issue of jurisdiction by a state to render a valid custody decree. (*People* v. *Superior Court* (*Smolin*) (1986) 41 Cal.3d 758, 770 [225 Cal.Rptr. 438, 716 P.2d 991] revd. on other grounds in *California* v. *Superior Court* (1987) 482 U.S. 400 [96 L.Ed.2d 332, 107 S.Ct. 2433]; *Rogers* v. *Platt, supra,* 199 Cal.App.3d 1204, 1211.) Thus, whether the California court could find jurisdiction under the UCCJA depends upon whether Oregon had jurisdiction to make its orders under the PKPA.[3]

■ The PKPA provides that a child custody determination is consistent with its provisions only if "(1) such court has jurisdiction under the law of such State; and (2) [either] (A) such State, (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State; . . ." (28 U.S.C. § 1738A(c)(2).) Section 5152 also contains this basis for jurisdiction.

"Home state" under both the UCCJA and PKPA is defined as the state in which, immediately preceding the time involved, the child lived with his parents, a parent or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old, the state in which the child lived from birth with any of such persons. "Person acting as parent" means a person, other than a parent, who has physical custody of a child and who has either been awarded custody by the court or claims a right to custody. (28 U.S.C. § 1738A(b)(4), (6); § 5151, subds. (5), (9).)

The trial court held that California was the child's home state. Appellants assert that Oregon is the child's home state because he has lived there since the time of his birth in early October 1990. We disagree with both conclusions. He was brought to Oregon shortly after his birth. Since he neither lived with his parents in California for six months immediately preceding the time involved, nor lived with appellants in Oregon from birth, he has no "home state." (*Rogers* v. *Platt, supra,* 199 Cal.App.3d 1204, 1214.) Thus we look to see whether jurisdiction lies under any other provisions.

■ A second basis for jurisdiction under the PKPA is that no other state other than the forum state would have jurisdiction as a home state, and it is in the best interest of the child that a court of such state assume jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with such state other than mere physical

---

[3]It is uncontested that Oregon has adopted the UCCJA and that the Oregon guardianship order was made prior to the instant proceedings.

presence in such state, and there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships. (28 U.S.C. § 1738A(c)(2)(B)(i).) "Contestant," under the PKPA, is a person, including a parent, who claims a right to custody or visitation of a child. (*Id.*, (b)(2).)

Here appellants brought the child into Oregon with formal consent of the mother for them to initiate guardianship and adoption proceedings. (Cf. *In re Timothy W., supra*, 223 Cal.App.3d 437, 447 in which the court stated that where the birth mother has never consented to an adoption, the prospective adoptive parents have no constitutional or statutory right to maintain a parent-child relationship.) Although they concede that procedural requirements for an independent adoption in California were not met, they complied with procedural requirements in Oregon. They obtained the court appointment of guardianship before they received notice that Michelle wished to withdraw her consent. Thus, the Oregon court had before it persons who had at least a colorable claim to custody based upon the birth mother's formal consent and who were domiciliaries of Oregon where evidence would be available concerning the child's present or future care, protection, training, and personal relationships.

Appellants qualify as "contestants" who claim a right to custody. All the child's medical records were in Oregon, as are witnesses to his adaptation to appellants' household. That a California court might also find "significant connection" with California based upon his birth there, his parents' residence, and information available concerning the consent to adoption, would not deprive Oregon of exercising jurisdiction initially under this section. Oregon met the jurisdictional requirements of the PKPA when a proceeding was commenced in its courts. Consequently, 28 United States Code section 1738A(g) required that the California court refrain from entertaining Michelle's petition where Oregon issued a prior custody order, still has jurisdiction, and remains the residence of the child or of any contestant. (28 U.S.C. § 1738A(d); see *Matter of B.B.R., supra*, 566 A.2d 1032, 1041.)

■ Even if the jurisdictional requirements of the PKPA were not met by Oregon, upon being apprised of the Oregon proceedings the California trial court, under the UCCJA, had a duty to stay the proceedings and communicate with the Oregon court "to the end that the issue may be litigated in the more appropriate forum and that information be exchanged in accordance with Sections 5168 through 5171" and abused its discretion by not so doing. (§ 5155, subd. (3); *In re Aisha B.* (1988) 206 Cal.App.3d 1030, 1034 [254 Cal.Rptr. 116]; *Palm v. Superior Court* (1979) 97 Cal.App.3d 456, 468 [158 Cal.Rptr. 786]; *Clark v. Superior Court* (1977) 73 Cal.App.3d 298, 301 [140

Cal.Rptr. 709].) The UCCJA contemplates that even where there is concurrent jurisdiction, only one state should exercise jurisdiction. (*Plas* v. *Superior Court, supra,* 155 Cal.App.3d 1008, 1018.) The trial court's decision was not consistent with the objectives of the UCCJA or the PKPA.

■    Michelle argued to the trial court that ICPC gave jurisdiction to California because that act provides that "The sending agency shall retain jurisdiction over the child sufficient to determine all matters in relation to the custody, supervision, care, treatment and disposition of the child . . . until the child is adopted, reaches majority, becomes self-supporting or is discharged with the concurrence of the appropriate authority in the receiving state." The ICPC would not vest jurisdiction in California courts. It is not clear whether the ICPC applies to independent adoptions between private parties. (See *Adoption of Baby Boy, O.G.* (1989) 145 Misc.2d 746 [547 N.Y.S.2d 806].) Assuming it does, Michelle was the "sending agency" and under the ICPC had the power to effect or cause the child's transfer to another location and custody. (§ 265.) Thus Michelle had the power to consent to appellants' obtaining guardianship of the child pending adoption. The ICPC does not apply to "(a) The sending or bringing of a child into a receiving state [Oregon] by his parent . . . and leaving the child with any such relative or nonagency guardian in the receiving state." (§ 265.) Most important, since the PKPA preempts state law on custody matters, the ICPC could not take precedence over any conflicting provisions in the PKPA.

The order withdrawing consent to adoption is reversed and the trial court is directed to issue a new order dismissing the petition. Michelle's only remedy, if any, must come from the Oregon court. Costs to appellants.

Gilbert, J., and Yegan, J., concurred.