1997 OK 109

**In the Interest of L.S., a minor child,**

**Marion Elizabeth CARRICO, Petitioner,**

v.

**Honorable Noah EWING, Judge of the District Court of McClain County, State of Oklahoma, Respondent,**

and

**Larry Don Stevens, Sr., and Ronnie Stevens, Real Parties in Interest.**

No. 87274.

Supreme Court of Oklahoma.

July 15, 1997.

Kenna R. Cavnar, Dodson & Cavnar, Purcell, for petitioner.

Ted W. Haxel, Purcell, for real parties in interest.

SIMMS, Justice.

¶ 1 The issues presented in this original proceeding are whether the Uniform Child Custody Jurisdiction Act, (UCCJA), 43 O.S. 1991, § 501, et seq., applies to adoption proceedings and, if so, whether that Act confers jurisdiction on the District Court of McClain County under these facts. We conclude the UCCJA does apply to adoption proceedings but that it does not confer jurisdiction over this action. Accordingly, we find that a writ of prohibition should issue to prevent the District Court of McClain County from proceeding further in this matter.

¶ 2 The facts, briefly stated, show that Marion Carrico, and Larry Don Stevens, Sr., mother and father of the minor child L.S., were married and were residents of Texas until they divorced in Montgomery County, Texas, in 1992. Under the terms of that decree, the father was awarded custody of L.S. and petitioner mother was granted visitation and ordered to pay child support. There has been substantial post-decree litigation activity between the parties in Texas. Three contempt proceedings were initiated by mother against the father and are pending. They concern father's failure to allow mother possession and access to the child, his refusal to disclose the child's address and his failure to pay attorney fees owed to mother. An attempt by father to "transfer" the divorce case from Texas to Oklahoma was denied. Also, a writ of habeas corpus had once been issued in favor of mother in Oklahoma.

¶ 3 The father and his wife, Ronnie Stevens, reside with L.S. in McClain County and they filed this petition for his adoption there in 1995. Pursuant to the provisions of 10 O.S.1991, § 60.6, they sought an order determining L.S. eligible for adoption by his stepmother without the consent of his natural mother, based on her alleged failure to pay child support as provided in the Texas divorce decree. Petitioner natural mother entered a limited appearance in the McClain County proceeding; she challenged the court's subject matter jurisdiction over the action under the UCCJA and sought its dismissal, asserting that Texas had exclusive continuing jurisdiction over the custody of L.S. The district court refused to dismiss the matter and the mother commenced this proceeding in this Court.

¶ 4 The father and stepmother contend that the adoption statutes are controlling here and are unaffected by the provisions of the UCCJA because that Act does not apply to an adoption proceeding. They submit that they meet the requirements of the adoption statutes (10 O.S.1991 §§ 60.2–60.4), and these provisions should be given credence regardless of past custody orders or pending contempt matters in Texas. They argue that the subject matter jurisdiction of Texas over this child's custody must be seen as concurrent with Oklahoma's because a finding that Texas retains exclusive jurisdiction would unduly limit and conflict with the provisions of our adoption statutes.

¶ 5 The UCCJA was designed to create interstate stability of child custody awards thereby eliminating the incentive for parents to engage in repeated litigation and shop for a forum more likely to grant them a favorable decree. The Act's stated purposes are avoiding jurisdictional competition and conflict, promoting interstate cooperation, litigating custody where child and family have the closest connections, discouraging continuing conflict over custody, deterring abductions and unilateral removals of children, avoiding relitigation of another state's custody decisions, and promoting exchange of information and other mutual assistance between courts of sister states. 43 O.S.1991 § 502. See Kumar v. Superior Court, 32 Cal.3d 689, 186 Cal.Rptr. 772, 652 P.2d 1003 (1982).

¶ 6 The UCCJA is the exclusive method in Oklahoma to determine subject matter jurisdiction in all custody proceedings. Title 43 O.S.1991, § 503 provides that the provisions of the Act "shall apply to all custody proceedings brought within the state, whether as an initial proceeding or modification."

¶ 7 A "custody proceeding" is defined by 43 O.S.1991 § 504 as one which:

" * * * includes proceedings in which a custody determination is one of several issues, such as an action for divorce or separation, and includes child neglect or dependency proceedings."

And a "custody determination" is defined as:

"* * * a court decision and court orders and instructions providing for the custody of a child, including visitation rights; it does not include a decision relating to child support or any other monetary obligation of any person;"

¶ 8 The issue of whether adoption is a "custody proceeding" which implicates the UCCJA is one of first impression in Oklahoma. We have considered the application of the Act to guardianship proceedings, however, and that analysis is helpful here. *In Matter of Guardianship of Walling*, 727 P.2d 586 (Okl.1986) a guardianship action was brought in Oklahoma by the paternal grandparents of two boys who had been removed from Oklahoma to California by their mother. In reaching its decision that the UCCJA does apply to guardianship proceedings, the Court relied in part on the UCCJA's commissioner's note stating that a "custody proceeding" is to be understood in a "broad sense". We concluded that in seeking the appointment of a guardian, the care and custody of a child is such a central issue that the issues of guardianship and custody are inextricably intertwined, thus requiring compliance with the provisions of the UCCJA.

¶ 9 Also, in *Matter of C.A.D.*, 839 P.2d 165 (Okl.1992), this Court found that a conservatorship proceeding filed in Texas by a child's custodians was a "custody proceeding" pending in another state which required compliance with the UCCJA and the Parental Kidnaping Prevention Act (PKPA) in habeas corpus action filed by the parents in Oklahoma. (The Texas action was treated by the parties as equivalent to our guardianship proceedings.)

¶ 10 The mother in the instant case correctly points out that although we have not considered the question of the applicability of the UCCJA actions to adoption proceedings, other states have done so and the overwhelming weight of authority favors application of the UCCJA in adoption proceedings. See *Souza v. Superior Court*, 193 Cal.App.3d 1304, 238 Cal.Rptr. 892 (1987); *Gainey v. Olivo*, 258 Ga. 640, 373 S.E.2d 4 (1988); *Noga v. Noga*, 111 Ill.App.3d 328, 67 Ill.Dec. 18, 443 N.E.2d 1142 (1982); *E.E.B. v. D.A.*, 89 N.J. 595, 446 A.2d 871 (1982); *J.D.S. v. Superior Court, County of Maricopa*, 182 Ariz. 98, 893 P.2d 749 (Ariz.App. Div. 1, 1994); *Foster v. Stein*, 183 Mich.App. 424, 454 N.W.2d 244 (1990); *In re Adoption of B.E.W.G.*, 379 Pa.Super. 264, 549 A.2d 1286 (1988); *In re Steven C.*, 169 Wis.2d 727, 486 N.W.2d 572 (1992); *State ex rel. Torres v. Mason*, 315 Or. 386, 848 P.2d 592 (1993); *Matter of Adoption of Baby Girl B.*, 19 Kan. App.2d 283, 867 P.2d 1074 (1994): See Annot., 78 A.L.R.4th 1028. See also *Hartsfield, The Uniform Child Custody Jurisdiction Act and the Problem of Jurisdiction in Interstate Adoption: An Easy Fix?* 43 Okl.L.Rev. 621, 648 (1990).[1]

¶ 11 Although the Act is silent regarding adoption, following the usual methods of statutory interpretation has led courts to conclude that adoption is a custody-determining procedure within the scope of the Act. In *Souza v. Superior Court*, 193 Cal.App.3d 1304, 238 Cal.Rptr. 892, 895–896 (1987), the court determined that the UCCJA and the PKPA were applicable in a stepparent adoption proceeding and California should have deferred to primary jurisdiction of Hawaii which issued the original divorce decree. By analogy to guardianship proceedings, the court reasoned that "custody embraces the sum of parental rights with respect to the

1. The author stresses that the only two reported cases which have been cited as holding that the UCCJA is inapplicable in adoption proceedings are arguably distinguishable as they involve proceedings to terminate parental rights. The author concludes that neither *Williams v. Knott*, 690 S.W.2d 605 (Tex.App.1985) nor *In re Johnson*, 415 N.E.2d 108 (Ind.Ct.App.1981) provides any significant basis for disagreement with the weight of authority. *Williams* does not reach the question of UCCJA application and decides only that a termination of parental rights proceeding is not a custody proceeding within the PKPA. The author states that *Johnson* is "clearly wrong" in its conclusion that jurisdiction exists for termination purposes where the only connection to the forum is father's residence. (See also the recent Texas decision, *White v. Blake*, 859 S.W.2d 551 (Tex.App.1993), which disapproved *Williams* and declined to follow it, holding that a suit to terminate parental rights *is* a "custody proceeding" subject to the provisions of the UCCJA.)

rearing of a child, including his care." [citations omitted] Rejecting the stepfather's argument that UCCJA standards did not apply in adoption proceedings, the court said:

"This argument is clearly wrong. The UCCJA regulates custody of children. An adoption proceeding to terminate parental custody rights is clearly a custody-determining proceeding of the most drastic kind.... Patently, a stepparent adoption, with its potential for completely terminating the natural father's custodial rights, is a custody-determining procedure and is ... subject to the UCCJA and the PKPA."

¶ 12 The court further explained that the important purposes of the UCCJA are served by interpreting the language of the act to include adoptions, for the "children here, subjects of conflicting decrees rendered by California and [Hawaii], are vulnerable to the very abuses the Act seeks to cure." [citations omitted]. The court emphasized that the Act's purposes are "relevant and important in a stepparent adoption."

¶ 13 In *Matter of Adoption of Baby Girl B.,* 19 Kan.App.2d 283, 867 P.2d 1074, 1078 (1994) the court found that the rationale of applying the UCCJA to termination of parental rights cases would also support the conclusion that UCCJA should apply to adoptions because who will or will not have custody of a child is also at issue in adoption proceedings. The court found that "custody proceeding" in the Act is broad enough to include adoption which inherently determines custody issues; noting that success for the adoptive parents is the "ultimate and final custody determination" for the natural parent.

¶ 14 We agree that adoption is an ultimate custody determination. If the father and stepmother were successful in the instant proceeding, the result would be to divest petitioner mother of all rights to the care and custody of L.S. The mother's right to custody, placed at risk by this proceeding, is the essence of parenthood. 10 O.S.1991 §§ 26, 27. See *In Matter of Adoption of Darren Todd H.,* 615 P.2d 287 (Okla.1980). This Court recognized in *Davis v. Davis,* 708 P.2d 1102 (Okl.1985) that the 10 O.S.1991 § 60.6 proceeding aims at parental substitu-

tion through termination coupled with an adoption; it operates to *replace* a parent. 10 O.S.1991 § 60.16.

■ ¶ 15 Considering the letter and spirit of the UCCJA, we conclude, as have the majority of jurisdictions which have considered the matter, that "custody proceeding" encompasses adoption actions.

¶ 16 Having decided that this adoption proceeding must comply with the UCCJA we must now determine where that Act places jurisdiction of this proceeding.

¶ 17 The UCCJA commands that the courts of this state will recognize and enforce "an initial or modification decree of a court of another state" 43 O.S.1991 § 515. In *G.S. v. Ewing,* 786 P.2d 65, 69 (Okla.1990), which is controlling here, the court considered an Oklahoma court's continuing exclusive jurisdiction under the UCCJA to modify a custody decree it had entered. The Court discussed the bases for jurisdiction set forth in 10 O.S.1991 § 505 and noted the UCCJA treats the jurisdiction to make an initial decree and jurisdiction to modify an existing decree differently and that the distinction between them is important. Initial jurisdiction is primarily placed in the home state of the child; the state where the child has lived for six months prior to the start of the proceedings, which is the state most likely to have substantial evidence about his or her present or future well being. Jurisdiction to modify custody decree is reserved for the state which rendered the decree. The *Ewing* court explained that modification jurisdiction is exclusive and continuing; it remains in the decree state as long as one parent resides there.

¶ 18 The limited authority of an Oklahoma court to modify an out of state decree is governed by 43 O.S.1991 § 516 which provides:

"A. If a court of another state has made a custody decree, a court of this state shall not modify that decree unless:

1. It appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this act or has declined to

assume jurisdiction to modify the decree, and

2. The court of this state has jurisdiction . . ."

¶ 19 Of particular importance to the case at bar is the principle that the exclusive continuing jurisdiction of the decree state is not affected by the child's residence in another state for six months or more. As discussed in *Ewing,* even when the new state becomes the child's home state, significant connection jurisdiction continues in the decree state for as long as one parent continues to live there. Continuing jurisdiction ends only when the child and all parties have moved away or when the state of the decree declines to exercise its modification jurisdiction. See also *Kumar v. Superior Court, supra; Bodenheimer, Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction Under the UCCJA,* 14 Fam.L.Q. 214–215 (1981).

¶ 20 Texas had original subject matter jurisdiction of this matter and under these facts it has continuing exclusive jurisdiction to modify its child custody determination. *G.S. v. Ewing, supra.*

¶ 21 The writ of prohibition is issued to prevent further exercise of jurisdiction by the court of McClain County over this matter except to dismiss the proceeding.

KAUGER, C.J., SUMMERS, V.C.J., and SIMMS, ALMA WILSON and WATT, JJ., concur.

OPALA, J., concurs in part, dissents in part.

HODGES, LAVENDER and HARGRAVE, JJ., dissent.

